W. A. NEAL, *et al.*, Petitioner, v. BRADENTON PRODUCTION CREDIT ASSOCIATION, Respondent.

200 So. 845
Special Division B
Opinion Filed February 21, 1941
Rehearing Denied March 27, 1941

*Leitner & Leitner,* for Petitioner;

*M. A. Rosin,* for Respondent.

BUFORD, J.—Bradenton Production Credit Association filed suit in the Circuit Court of DeSoto County to foreclose a mortgage executed in July, 1938, to secure the payment of two thousand ($2,000) dollars due June 20, 1939. The mortgage pledged certain real estate described therein, certain personal property and

"(1) All crops, fruit and other products planted, growing and to be planted, grown and raised (during the current and five succeeding crop seasons and until said indebtedness is paid), upon the lands hereinabove described:" . . .

It also contained the following clauses:

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the rents, issues and profits thereof.

"The provisions, terms, covenants, conditions, obligations,

powers and other contents set forth in Section A through C, except Section B-11, in that Blank or Master Form of Mortgage No. 1 of Bradenton Production Credit Association, recorded in the office of the Clerk of DeSoto County, Florida, in Mortgage Book 59, page 410, are .hereby incorporated by reference, and made a part of this instrument as if set forth herein *in extenso*. (Receipt of a copy of said Master Form is hereby acknowledged by Borrower)."

The Blank or Master. Form of Mortgage No. 1 above referred' to, *inter alia,* provides:

"21. That in the event of any breach or default of the terms, covenants, conditions or stipulations of this instrument or of the obligations secured hereby, or should the security hereof be diminished, of any of which Lender shall have notice, Lender, at its option, shall have all of the following rights:

"a. To decline to make further advances.

"b. To declare all of the indebtedness hereby secured immediately due and payable without notice to Borrower.

"c. To have immediate possession, use and enjoyment of the property hereby encumbered and to receive the rents, issues and profits thereof from the accrual of such right.

"d. And to foreclose the lien hereof. If such possession, use and enjoyment shall not be delivered to Lender, then, in that event, Borrower consents and agrees that a Receiver may be appointed (whether or not Borrower is insolvent) to take charge of the property hereby encumbered during the pendency of any such foreclosure proceedings, to receive the rents, issues and profits therefrom and to' apply the same toward the retirement of the indebtedness hereby secured.

"Section C. Borrower further covenants, undertakes and agrees as follows:

"1. To plant, cultivate, fertilize, spray, harvest, pack and process with ordinary care and diligence, all of the crops hereby encumbered.

"2. That in the event of any breach or default whereby the right of foreclosure accrues, as aforesaid, Lender may, as a cumulative or concurrent remedy, sell the farm machinery and equipment, livestock and/or crops in being at public sale to the highest bidder for cash at the court house in the county where said property or any part of it is located at the time of sale, after giving twenty days' notice thereof, and the proceeds of such sale shall be applied first to the payment of the costs and expenses of such sale and then to the payment of the amount of principal, interest and attorneys' fees due upon said obligations and the remainder of the proceeds, if any, shall be paid to Borrower."

By amendment filed on November 26, 1940, the plaintiff, *inter alia*, alleged:

"That it is advised and has reason to believe, and alleges upon information and belief that the hereinbefore mentioned agreement between W. A. Neal, *et ux.*, and Welles Fruit & Live Stock Company, a corporation, for the benefit of DeSoto National Bank of Arcadia, has been canceled, but that said cancellation was not of record among the public records of DeSoto County, Florida, when this action was instituted.

"14. That it is informed and does believe that the defendant Welles Fruit & Live Stock Company, a corporation, claims some type of interest in and to the real property which is the subject matter of this litigation, and that it does so claim it under a written instrument which is not of record among the public records of DeSoto County, Florida; and plaintiff says that said Welles Fruit & Live Stock Company, a corporation, have an interest in the subject matter of this litigation, junior to that of plaintiff.

"15. Plaintiff says that the security it has for its mortgage aforesaid, is inadequate to .pay the two prior mortgages against the real property involved in this foreclosure action and the mortgage herein being sought to be foreclosed; that the mortgagor has delivered up the real property covered by its mortgage to a junior lien holder or creditor, Welles Fruit & Live Stock Company, a corporation, and that mortgagor is out of control of the same; that said Welles Fruit & Live Stock Company claims a lien upon the mortgage security which is junior to that of plaintiff, but that said Welles Fruit & Live Stock Company is going to and will appropriate the crop of cntrus fruit upon the grove to the payment of its lien, which is junior to the lien of plaintiff unless prevented from so doing by the appointment of a receiver by this Court to take charge of and possession of the property involved in this litigation and the citrus grove; plaintiff says that if said citrus crop is allowed to be removed from the property, the value of the. property will be further depreciated, and that it is necessary and essential to prevent the security from being further depreciated by preserving the *status quo* by the appointment of a receiver, for otherwise a valuable part of this security would be dissipated while the debt would be allowed to be increased and the issues and profits from the property being applied to a junior lien holder."

It then alleged in effect that Welles Fruit & Live Stock Company had picked a substantial amount of the citrus fruit covered by the mortgage and removed the same from the grove, thereby impairing the security of the plaintiff's mortgage; that Neal had no other property in DeSoto County other than the property involved in the litigation and that plaintiff had been unable to find any other property which he could subject to the payment of the indebtedness due

to the plaintiff by said Neal and that said Neal is insolvent, and prayed for the appointment of a receiver.

A receiver was appointed to take charge of all the property including the fruit.

Thereafter, on December 13, Welles Fruit & Live Stock Company filed petition praying the court to vacate and set aside that part of the order appointing receiver which authorized the receiver to take charge of and handle the citrus fruit, and alleged:

"The said crop of citrus fruit is not the property of the defendants, W. A. Neal and Vera Welles Neal, nor have the said defendants W. A. Neal and Vera Welles Neal any interest in the said crop of citrus fruit, either legal or equitable, and the mortgage here sued on is not secured by the said citrus crop, nor has the complainant a lien, either legal or equitable upon the said citrus crop or any part thereof, all of which is shown by the affidavits of Lovick Holtzendorf, cashier of the DeSoto National Bank of Arcadia, a corporation, Homer L. Welles, member of Welles Fruit & Live Stock Company, a corporation, and W. A. Neal, filed in this cause, copies of which are hereto attached and made a part of this petition."

Attached to the petition was the affidavit of Homer L. Welles which, *inter alia,* averred:

"That Welles Fruit & Live Stock Company is a corporation for the production and handling of citrus fruits; that its principal place of business is in Arcadia; that the said land above described is owned by the defendant W. A. Neal; that on and before February 1, 1939, the said W. A. Neal realized that he was unable to care for and maintain the citrus grove situated upon the said property and approached the said Welles Fruit & Live Stock Company and asked that it take over the said property and see if the said Welles Fruit & Live Stock Company could not maintain the said

grove and make it show a profit instead of a deficit which it was then showing; that the said Welles Fruit & Live Stock Company then being in that kind of business, agreed to take over the said property, maintain the said grove by advancing money for the fertilization, upkeep and maintenance of the said grove situated upon the said property; that on, to-wit, the said first day of February, 1939, the said defendant W. A. Neal did turn over and deliver the said property to the said Welles Fruit & Live Stock Company and the said Welles Fruit & Live Stock Company has been in the actual, adverse and exclusive possession of all of the said property since the said date and the Welles Fruit & Live Stock Company advanced money for the fertilization, upkeep and maintenance of the said grove and actually produced the citrus crop now on the said grove; that the said W. A. Neal has not been in possession of the said property since the said first day of February, 1939; has had nothing to do with the said property and has not contributed towards the making of the crop of citrus fruit now situated upon the said grove; and has never had any interest, either legal or equitable in said crop of fruit; that the said Welles Fruit & Live Stock Company did produce the said crop of citrus fruit now situated on the said grove and the said crop of fruit is now practically made and is ready to be handled; that the said Welles Fruit & Live Stock Company has paid out, expended and advanced money in the sum of $996.62 to produce the said fruit and to keep the said grove in good condition, and the said crop of fruit now on the said grove, which fruit is now in a marketable condition, is not worth more than $800.00; that the complainant knew or should have known that the Welles Fruit & Live Stock Company had produced the said crop of fruit now on the said grove, and is now entitled to the said fruit to the exclusion of the

said complainant and the said complainant is not entitled to have a receiver appointed for the said fruit crop."

To the same effect is an affidavit by W. A. Neal.

On January 3, 1941, the Honorable W. T. Harrison, Judge, denied the motion to discharge the receiver as to the fruit crop involved.

To this order Welles Fruit & Live Stock Company addressed petition for certiorari for review by this Court.

It is, in short, the contention of petitioner that Welles Fruit & Live Stock Company produced the fruit under an agreement with the owner-mortgagor and that the lien of the mortgage is not applicable to that fruit so produced.

Section 1 of Chapter 10279, Acts of 1925, Section 5741 C. G. L., and Section 2 of the same Act, being Section 5742 C. G. L., provides:

"Lien of Mortgage—Proviso.—Valid mortgage liens may be created upon agricultural, horticultural or fruit crops, then planted, growing or to be thereafter planted, grown or raised: Provided that the lands upon which said crops are grown or raised, or are to be thereafter grown or raised, are fully described in said mortgage.

"5742. Execution, Acknowledgment and Recording.—In order to be valid, however, against susbequent encumbrances, or subsequent purchasers in good faith, all such mortgages shall be executed, acknowledged and recorded, as is now, or may be hereafter provided by law, upon mortgages upon real estate."

In Haines City Citrus Growers Assn. v. Petteway as Receiver, 107 Fla. 344, 145 Sou. 183, we said:

"Under the provisions of Section 1, Chapter 10279, Acts of 1925, Compiled General Laws, Section 5741, valid mortgage liens may be created upon agricultural, horticultural or fruit crops then planted, growing, or to be thereafter planted, grown or raised; provided that the lands upon

which said crops are grown or raised or are to be thereafter grown or raised, are fully described in the mortgage. Summerlin v. Orange Shores. Inc., *supra.* Such mortgages on crops not in being may operate as a lien on such crops as soon as they come into existence. Summerlin v. Orange Shores, Inc., *supra;* 5 R. C. L. 407. Fruit-crop mortgages, however, in order to be valid against subsequent encumbrances, or subsequent purchasers in good faith, shall be executed, acknowledged and recorded, as is now, or may be hereafter provided by law, upon mortgages upon real estate. Section 2, Chapter 10279, Acts of 1925; Section 5742, Compiled General Laws. See also Section 5762, Compiled general Laws of 1927. But fruit-crop mortgages given under Sections 5741 and 5742, Compiled General Laws, do not take precedence over prior existing recorded mortgages in terms covering the fruit crops and lands, unless by consent of the prior mortgagees. Plant City Agricultural Credit Co. v. Pool, 103 Fla. 806, 139 So. 595; Hyman v. City Trust Co., 99 Fla. 1202, 128 So. 611."

In the case of Summerlin v. Orange Shores, Inc., 97 Fla. 996, 122 Sou. 508, we held:

"Owner of fruit, before default in payment of debt secured by real estate mortgage, may give chattel mortgage upon fruit in existence under Comp. Gen. Laws 1927, Sec. 5741, but owner cannot create lien on fruits superior to first mortgage lien upon the land by attempting to mortgage fruit not yet in existence, and which does not come into existence until after default in the real estate mortgage and institution of proceedings for foreclosure."

So it is well settled that a valid mortgage lien may be created on crops of citrus fruit to be grown in the future by the execution of a mortgage such as we have before us in this case and the mortgagor may not defeat the right so acquired by the mortgagee by turning over the mortgaged

citrus grove to a third party to produce a crop of fruit covered by the terms of the mortgage, where such mortgage carries a proper description of the lands upon which the crops are to be produced and has been executed, acknowledged and recorded according to law. Welles Fruit & Live Stock Company had legal notice by the record of the mortgage that Bradenton Production Credit Association held a first lien on the crop to be produced to secure the payment of an outstanding indebtedness then in default and it could not defeat the lien of the mortgage by the operation of any agreement between it and the mortgagor to which the mortgagee was not a party, and where the mortgagee had not consented to such agreement and the waiver of its prior lien.

For the reasons stated, certiorari is denied.

So ordered.

BROWN, C. J., TERRELL and CHAPMAN, J. J., concur.