43938.   FIRST NATIONAL BANK & TRUST COMPANY v. SMITHLOFF.

ARGUED SEPTEMBER 6, 1968—DECIDED FEBRUARY 14, 1969—REHEARING DENIED MARCH 5, 1969—

*Hull, Towill & Norman, Edward H. Robertson,* for appellant.
*Nall, Miller, Cadenhead & Dennis, Gerald A. Friedlander,* for appellee.

BELL, Presiding Judge. ■ Plaintiff contends that its security interest was properly perfected by notation on a certificate of title issued pursuant to the provisions of the Motor Vehicle Certificate of Title Act (Ga. L. 1961, p. 68, as amended; *Code Ann. Ch.* 68-4A). Defendant Smithloff argues that the bank's security interest should have been perfected under the Uniform Commercial Code (Ga. L. 1962, p. 156; *Code Ann. Title* 109A).

The Commercial Code purposes to cover transactions (including sales of limited interests) in consumer goods. (See *Code Ann.* §§ 109A-2—102, 109A-2—403) and the creation of security interests in those goods (*Code Ann.* § 109A-9—102.) However, the provisions of Article 9 of the Commercial Code (*Code Ann. Ch.* 109A-9), pertaining to the filing, perfection and priority of security interests, "do not apply to a security interest in property subject to a statute . . . of this State which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property." *Code Ann.* § 109A-9—302 (3) (b). That section obviously refers to the Motor Vehicle Certificate of Title Act.

The Certificate of Title Act provides: "This Act does not apply to or affect a security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale." Ga. L. 1961, pp. 68, 73, as amended by Ga. L. 1962, pp. 79, 80 (*Code Ann.* § 68-405a). But that section must be considered in light of the following exclusionary provision: "No certificate of title need be obtained for. . . A vehicle owned by a manufacturer of/or dealer in vehicles and held for sale, *even though incidentally used on the highway or used for purpose of testing or demonstration.*" Ga. L. 1961, pp. 68, 72 as amended by Ga. L. 1962, pp. 79, 80 (*Code Ann.* § 68-404a (2)). The construction of lan-

guage and words used in *Code Ann.* §§ 68-404a (2) and 68-405a must be in the light of the legislative intent as found in the statute as a whole, and we must attribute meaning to every part of the statute if possible. *Undercofler v. Capital Automobile Co.*, 111 Ga. App. 709, 716 (143 SE2d 206).

The advantage of central recordation and tracking of interests in motor vehicles in regular use is obvious. The manifest purpose of the Act was to provide a comprehensive system, with few specific exceptions, for central recordation of ownership, security interests and liens in all motor vehicles registered and regularly in use in this State. See the preamble of the Act, Ga. L. 1961, p. 68 and *Code Ann.* § 68-404a. The term "incidentally" embraced in the qualification of the exclusion from the Certificate of Title Act (*Code Ann.* § 68-404a (2)) indicates a use which is merely casual and not the prime purpose of the holding for sale. Thus, notwithstanding that a lease is a sale of a leasehold interest, the phrase "held for sale" should not be construed to mean a holding subject to a leasehold interest, which would contemplate regular, not incidental, use on the highway. Once a sale of an automobile has occurred contemplating regular use, whether it be a sale of a complete or limited interest, the vehicle is then subject to certification under *Code Ann. Ch.* 68-4A.

This holding does not inhibit subsequent floorplanning of a vehicle if taken out of regular use and retained in inventory for sale. Perfection of the security interest in inventory would then come under the Commercial Code. *McDonald v. Peoples Auto. Loan &c. Corp.*, 115 Ga. App. 483, 486 (154 SE2d 886). As to the security interest created by the dealer, priority would be governed by *Code Ann.* §§ 109A-9—307 (1) and 68-405a. In other respects, priorities would be governed by *Code Ann.* § 68-421a.

It follows that plaintiff's security interest in the vehicle in this case was properly perfected by notation on the certificate of title issued by the commissioner on September 20, 1967. However, since application for the certificate of title indicating plaintiff's security interest was not delivered to the commissioner within 10 days after creation of the interest, perfection dated not

from the time of creation of the security interest, but from the date of delivery of the application to the commissioner, September 5, 1967. *Code Ann.* § 68-421a (b).

We conclude that the Uniform Commercial Code is applicable in any questions here relative to the creation of property interests in the vehicle while the Certificate of Title Act is applicable in determining any issues pertaining to perfecting of plaintiff's security interest.

■ We reject defendant's contention that he is entitled to priority because the plaintiff bank had actual notice of his interest in the car when its security interest was created. As to the effect of actual notice see *Franklin Finance Co. v. Strother Ford, Inc.*, 110 Ga. App. 365, 368 (138 SE2d 679). Here the only evidence of notice was testimony showing the bank officers knew the company was in the business of leasing automobiles and that the bank was lending money on a car which the company had acquired the same day for the purpose of leasing it to someone. There was no evidence showing whether the automobile had already been delivered to Smithloff or that the bank officers knew of any pre-existing agreement between the company and a third party. Under these circumstances we cannot say as a matter of law that the facts were sufficient to put the bank on inquiry.

■ The indeterminate factor in this case is the relative time of creation of the security interest in plaintiff and the leasehold interest in defendant. The lease contract referred to no specific automobile, and identification of the vehicle to the contract was not possible prior to June 27, 1967, the date on which the company acquired the vehicle and delivered it to Smithloff. "Title to goods cannot pass under a contract for sale prior to their identification to the contract (109A-2—501)." *Code Ann.* § 109A-2—401 (1). "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." *Code Ann.* § 109A-2—401 (2); Cf., *Code Ann.* § 109A-2—501 (1) (b). Thus it is clear that defendant Smithloff acquired no interest in the particular vehicle until June 27, 1967. It follows that the trial court was correct

in directing a verdict for Smithloff only if his interest was entitled to priority irrespective of the question whether it was created either before or after plaintiff's security interest, but before perfection of the security interest.

■ If Smithloff acquired his interest before creation of the security interest, it makes no difference that his interest was not indicated on a certificate of title under *Code Ann. Ch.* 68-4A. A lease is not subject to the filing provisions of either the Certificate of Title Act or the Uniform Commercial Code unless it is intended to create a security interest. Cf. *Code Ann.* § 68-402a (g) and (k); *Code Ann.* § 109A-1—201 (37); *Code Ann.* § 109A-9—102 (1) (a) and (2).

"Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." *Code Ann.* § 109A-1—201 (37). Situation (b) does not exist here; situation (a) exists only by virtue of the fact that the company ceased its business activities, and this factor alone would not make the lease a security interest.

While the language of the lease contract was couched in terms of a loan from Smithloff to the company, Smithloff retaining possession of the automobile until the debt was paid, it is clear from the lease agreement and from the evidence in the record that possession of the automobile was not held merely as security for the repayment of the loan but that the loan arrangement was an unusual form of consideration to effectuate the dominant purpose of Smithloff's having possession of this and later model automobiles "for his use (and any member of his family or any employee or agent of Smithloff)." It is of surpassing importance that the lease agreement did not give to the lessee the right to proceed directly against the lessor's interest in the vehicle in any fashion, either judicially or summarily, in order to realize proceeds to be credited against the loan simply in the event of a default. Thus, as a matter of law, the lease

agreement did not create a security interest. It follows that it was not necessary for Smithloff to perfect his interest under *Code Ann. Ch.* 68-4A in order to render it "valid against subsequent creditors of the owner, subsequent transferees and the holders of security interests and liens on the vehicle" within the meaning of *Code Ann.* § 68-421a (a). There is no question here of priority between conflicting security agreements.

With reference to Division 2, it is clear at this point of the opinion that the absence of actual or constructive notice of property rights not subject to statutory provisions for perfection and priority does not affect the validity of those rights against subsequent interests.

■ A security interest cannot be perfected until it has attached (*Code Ann.* § 109A-9—303 (1)), and it cannot attach unless the debtor has rights in the collateral (*Code Ann.* § 109A-9—204 (1)). While the Commercial Code does not specifically say so, it is self-evident that in the absence of special circumstances a security interest can attach only to the extent of the interest of the debtor. Assuming the company had previously transferred to Smithloff, in an outright transfer rather than a security agreement, the right to possession and the right to a transfer of title upon the happening of a certain contingency, the company could not subsequently create a security interest against the property rights of Smithloff. One cannot encumber another man's property in the absence of consent, estoppel, or some other special rule. *Patterson Co. v. Peoples Loan &c. Co.,* 158 Ga. 503, 505 (123 SE 704). Of course, the company could encumber its interest in the vehicle, but not that of Smithloff.

■ Having determined that Smithloff was entitled to priority if he acquired his interest in the specific property before creation of the security interest, we assume henceforth that the security interest was created before Smithloff acquired his interest under the lease contract and was perfected afterwards.

*Code Ann.* § 109A-9—307 (1) provides: "A buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security [interest] is perfected and even though the buyer knows of its existence." And *Code Ann.* § 68-405a, which exempts from certification title and

a security interest in a vehicle created by a dealer who holds the vehicle for sale, goes on to provide: "A buyer in the ordinary course of trade from the manufacturer or dealer takes free of the security interest."

We think that those provisions of the Commercial Code and the Certificate of Title Act are not applicable in this case. They are inapplicable, not because a lessee of an automobile from a dealer is not a "buyer in ordinary course of business," but because those provisions are not operative in instances where perfection of the security interest is required under *Code Ann. Ch.* 68-4A. The operation of *Code Ann.* § 109A-9—307 (1) in this case is expressly excluded by *Code Ann.* 109A-9—302 (3) (b). The quoted portion of *Code Ann.* § 68-405a is merely correlative to the quoted portion of *Code Ann.* § 109A-9—307 (1), and according to other terms of *Code Ann.* § 68-405a, it is applicable only in instances where the dealer's title is not subject to certification under *Code Ann. Ch.* 68-4A.

In connection with *Code Ann.* § 109A-9—307 (1), which is addressed to sales out of a previously encumbered inventory, see Official Comment 3, U. C. C. § 9-109. That official U. C. C. comment obviously does not contemplate statutory provision for central recordation of interests in vehicles outside the provisions of the Commercial Code.

■ Having exhausted all other possibilities, it remains that we must finally look to *Code Ann.* § 68-421a (a) and (b) (Ga. L. 1961, pp. 68, 83, as amended by Ga. L. 1962, pp. 79, 85) in order to determine priority between this plaintiff and this defendant.

As originally enacted, Section 21 (a) of the Certificate of Title Act read: "A security interest in a vehicle . . . for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act." Ga. L. 1961, pp. 68, 83. Section 21 (a) as amended provides: "The security interest in a vehicle . . . for which a certificate of title is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees and the holders of security interests and liens on the vehicle by compliance with the provisions of this Act." Ga. L. 1962, pp. 79, 85; *Code Ann.* § 68-421a.

Under the original Act perfection of a security interest was essential to validity of the interest, except as between the debtor and creditor themselves. It was invalid even against a subsequent creditor or transferee who acquired his interest with actual notice of the intervening equity. We feel that the legislative intent in amending Section 21 (a) was merely to protect security interests against third persons who acquire rights in a vehicle with actual notice of the security interest or without giving value in the interim period between creation of a security interest and late perfection of the interest. The amendment does not expressly or by necessary implication render a late-perfected security interest retroactively valid against an innocent third party. We do not construe the amendment as permitting retroactive validity against innocent third parties who have acquired rights for value. In interpreting the amendment it must be "presumed that the legislature did not intend to effect a greater change than is clearly apparent either by express declaration or by necessary implication." *Undercofler v. Colonial Pipeline Co.,* 114 Ga. App. 739, 743 (152 SE2d 768).

The evidence showed without dispute that defendant Smithloff had no actual knowledge of plaintiff's security interest until one of the bank officers phoned him sometime in September and demanded possession of the car. His constructive notice dated from September 5, 1967, when the application for a certificate of title was belatedly delivered to the commissioner and the security interest thus perfected. *Code Ann.* § 68-421a (b). Under our interpretation of *Code Ann.* § 68-421a (a), defendant Smithloff, whose rights in the vehicle dated from June 27, 1967, had priority, notwithstanding that the creation of plaintiff's security interest on the same date may have occurred first.

■ A verdict for defendant being demanded under any view of the evidence, the judgment for defendant based on the directed verdict is affirmed.

*Judgment affirmed. Hall and Quillian, JJ., concur.*