44080. FIRST NATIONAL BANK & TRUST COMPANY
OF AUGUSTA v. McELMURRAY et al.
44081. INTERSTATE SECURITIES COMPANY v.
McELMURRAY et al.

ARGUED JANUARY 6, 1969—DECIDED MAY 19, 1969—
REHEARING DENIED JULY 17, 1969—

*Hull, Towill & Norman, Julian B. Willingham, Fulcher, Fulcher, Hagler, Harper & Reed, William C. Reed,* for appellants. *Congdon & Williams, W. Barry Williams,* for appellees.

QUILLIAN, Judge. ■ Interstate now contends that while Smith filed a claims affidavit, no bond as required by *Code* § 39-802 was filed with the affidavit. The record reveals that no objection based on this ground was made in the lower court.

The rule is well settled that a claim filed by a third party is invalid in the absence of an affidavit in forma pauperis or a bond indemnifying the plaintiff in fi. fa. *Johnson v. Planters' Bank,* 34 Ga. App. 241 (129 SE 125); *Brooks v. Goette,* 52 Ga. App. 408 (183 SE 633). However, where a claim is pending in the superior court, the presumption is that the claimant has given the damage bond required by the statute. *Drummond v. Drummond,* 71 Ga. App. 474 (1) (31 SE2d 74); *Hand v. Frank W. Hall Merchandise Co.,* 91 Ga. 130 (16 SE 644). Since no objection was made as to the lack of a bond in the trial court and in the absence of a clear showing to the contrary, this court will presume the required bond was given.

■ The recent opinion of this court in *First Nat. Bank &c. Co. v. Smithloff,* 119 Ga. App. 284 (167 SE2d 190), is in our view controlling with regard to the principal issues of these cases. In conformity with that opinion, the following rulings are made.

(a) A lease is not subject to the filing provisions of either the Certificate of Title Act or the Uniform Commercial Code unless it is intended to create a security interest. Therefore, it was not necessary for the claimant Smith to perfect his interest derived from the lease, since, by its terms, there was no intention to create a security interest. *First Nat. v. Smithloff,* 119 Ga. App. 284, 289, supra.

(b) Under *Code Ann.* § 109A-2—401 (1) title to goods cannot pass prior to their identification. While the lease contract refers to no specific automobile and identification of a particular vehicle was not possible prior to the date it was acquired and delivered to Smith, title did pass at the time and place at which the seller completes performance with reference to the physical delivery of the goods under *Code Ann.* § 109A-2—401 (2). *First Nat. v. Smithloff,* 119 Ga. App. 284, 288, supra. There was evidence from the affidavit of Smith that McElmurray acting for McElmurray Motors delivered possession of the

auto to him on August 4, 1967. Interstate points out that on August 4 when Smith obtained possession of the vehicle the certificate of origin showed title to be in McElmurray and not McElmurray Motors. Using this as a basis it is urged that Smith could not acquire its interest on August 4.

Here there is proof clearly showing that McElmurray was acting for McElmurray Motors with regard to the transfer to Smith. *Code Ann.* § 109A-2—403 (Ga. L. 1962, pp. 156, 202), points out that the entrusting of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business. See *Charles S. Martin Dist. Co. v. Banks,* 111 Ga. App. 538, 539 (142 SE2d 309). The instant contract does not preclude Smith from being a "buyer in the ordinary course of business." *First Nat. v. Smithloff,* 119 Ga. App. 284, 291, supra. Thus, it could be found that McElmurray both entrusted the goods to McElmurray Motors and consented to the transfer so that Smith acquired his interest on August 4, 1967.

Moreover, for the purposes of this decision, we assume but do not decide that McElmurray Motors must have had its title listed on the certificate of origin before Smith could acquire his interest.

In such case, having already been given possession on August 4, 1967, Smith would have acquired his interest, if not retroactively to August 4, then certainly not later than August 7, at which date McElmurray Motors was officially listed on the certificate of title as holder of record. *First Nat. v. Smithloff,* 119 Ga. App. 284, supra. See 46 AmJur 221, Sales, § 28.

(c) In the absence of special circumstances a security interest attaches only to the extent of the debtor's interest. Thus, a security interest could not be subsequently created as against the property rights of Smith, since one cannot encumber another man's property in the absence of consent, estoppel, or some other special rule. *First Nat. v. Smithloff,* 119 Ga. App. 284, 290, supra, and *Howington v. Metropolitan State Bank,* 119 Ga. 457 (167 SE2d 737). The claimant Smith was not estopped by the fact that he left the indicia of ownership with the dealer because the dealer had title, unless the business

closed, in which case Smith would acquire title under the terms of the agreement.

■ We first consider the rules of law with reference to First National Bank's security interest. First National contends that this case is distinguishable from *Smithloff*, 119 Ga. App. 284, supra, because the instant lease agreement does not contain a provision that the leasing company covenanted that it would "not assign or otherwise convey title to any automobile subject to the agreement" as was found in that case. That this phrase is not controlling is apparent from the opinion in *Smithloff* which, after holding that one cannot encumber another's property, concludes (p. 290): "Of course, the company could encumber its interest in the vehicle, but not that of Smithloff." *First Nat. v. Smithloff*, 119 Ga. App. 284, 290, supra.

There was evidence that Smith acquired his interest not later than August 7, 1967, and that First National's security interest was created on August 11, 1967. This amounted to a showing from which a jury might find that Smith was entitled to prevail predicated on the acquisition of his interest in the specific property before the creation of the security interest.

4. With regard to Interstate's financing statement, a serious question exists as to whether the Motor Vehicle Certificate of Title Act or the Commercial Code controls. *Code Ann.* § 109A-9—302 (3) (b). Basically, a security interest created by a dealer on his inventory is subject to the provisions of the Commercial Code, and not those of the Certificate of Title Act. *Code Ann.* §§ 68-404a (2) and 68-405a; *Dunford v. Columbus Auto Auction*, 114 Ga. App. 407 (151 SE2d 464); *Guardian Discount Co. v. Settles*, 114 Ga. App. 418, 421 (151 SE2d 530); *Staley v. Phelan Finance Corp.*, 116 Ga. App. 1, 2 (156 SE2d 201). See also the discussion of "holding for sale" under the Certificate of Title Act in *First Nat. v. Smithloff*, 119 Ga. App. 284, 286, supra. However, we point out that the financing statement was not perfected within the meaning of the Motor Vehicle Certificate of Title Act and hence would not be viable under the mandate of that statute. *Code Ann.* § 68-421a. For, under the ruling in *Smithloff*, supra, the security must have been perfected, as well as created, prior to the time the lessee acquired his interest.

Thus, if at all, the financing statement could be effective solely under the provisions of the Commercial Code and we evaluate its status in that posture.

Since Interstate concedes that the financing statement per se would not serve to give it a lien on the vehicle, we consider it in conjunction with, and as evidenced by, the security instrument of August 7, 1967. A security agreement is not perfected until the required steps are completed, to wit: (1) the debtor and the secured party reach an agreement (*Code Ann.* §§ 109A-1—201 (3) and 109A-9—204 (1)); (2) which agreement either is evidenced by possession of the collateral by the secured party or reasonably identifies the collateral and is signed by the debtor (*Code Ann.* §§ 109A-9—203, 109A-9—204 (1) and 109A-9—110); (3) the debtor has or acquires rights in the collateral (*Code Ann.* § 109A-9—204 (1)); (4) the secured party gives value (*Code Ann.* § 109A-1—201 (44)); (5) the necessary notice is given (*Code Ann.* § 109A-9—302). Vol. 1, Secured Transactions under U. C. C., § 3.17; *Code Ann.* § 109A-9—303. For the necessity of meeting these requirements, see *McDonald v. Peoples Auto. Loan &c. Corp.*, 115 Ga. App. 483, 487 (154 SE2d 886).

We have already determined that Smith's interest was, at least, acquired eo instanti with that of McElmurray Motors on August 7, 1967. By the same parity of reasoning Interstate's lien likewise could not have attached until the same day since that was when McElmurray Motors acquired title. *Code Ann.* § 109A-9—204 (1). Hence, so far as the record shows all the necessary steps were not fulfilled prior to August 7, 1967. Vol. 1, Secured Transactions under U. C. C. §§ 2.18 (1) & (4), 4.02 and 4.03. The burden was upon Interstate to show conclusively that its interest was perfected *prior* to that of Smith and, construing the proof offered most strongly against the movant and giving all favorable inference to the party opposing the motion, it failed to achieve this.

Moreover, assuming there was an effective perfected security interest, the following rule is applicable: "A buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is per-

fected and even though the buyer knows of its existence." *Code Ann.* § 109A-9—307. See related section of Motor Vehicle Certificate of Title Act, *Code Ann.* § 68-405a. Even if the property was previously encumbered, whether the claimant Smith occupied the status of one who took in the ordinary course of business would be a question for the jury. Hence, the evidence did not demand a finding for Interstate on its financing statement and security instrument, and the trial judge did not err in denying its motion for summary judgment.

*Judgments affirmed. Felton, C. J., and Pannell, J., concur.*