54063, 54064, 54065, 54066, 54067, 54068, 54069. ROME BANK & TRUST COMPANY v. BRADSHAW et al.
(seven cases).

QUILLIAN, Presiding Judge.

These seven appeals now before this court involve basically similar factual situations and will be dealt with (except as noted) as one case. In each action, the plaintiff bank brought a complaint against Bradshaw, a used car dealer, and an individual defendant, a purchaser of a vehicle from the defendant Bradshaw. The plaintiff bank sought to foreclose on certain collateral (the vehicle) and obtain possession thereof under the provisions of Code § 67-701, as amended (Ga. L. 1974, pp. 398, 399).

The defendant Bradshaw filed a motion to dismiss the complaint and the individual defendant filed a motion for summary judgment. Subsequently, the plaintiff filed a motion for summary judgment. After a hearing, the trial judge entered an order which denied the plaintiff's motion for summary judgment and granted the defendant Bradshaw's motion and the individual defendant's motion for summary judgment. The plaintiff bank appeals from the grant of the motion for summary judgment in favor of the various defendants.

In two cases, 54063 and 54068, there is no signed order by the trial judge granting the individual defendant's motion for summary judgment. Furthermore, no appeal was taken with regard to the individual defendant. Hence, in those two cases (54063 and 54068) we make no ruling as to the individual defendants.

The following facts are pertinent to our consideration of this case. The defendant Bradshaw operated a sole proprietorship in the name of Bradshaw Motor Company, the business of which was the buying and selling of used automobiles. The plaintiff bank for several years provided financing to the defendant Bradshaw for the purchase of various cars which he maintained in inventory. In conjunction with this arrangement the defendant Bradshaw and the plaintiff bank entered into a security agreement; in addition, the parties executed a financing statement under the provisions of the Georgia Uniform Commercial Code which was duly filed for record in the office of Floyd Superior Court Clerk. The parties, therefore, operated under what is commonly known as a floor-plan arrangement. At the time the loan was made to the defendant Bradshaw for the purchase of a particular car, a collateral note was executed by him to the plaintiff bank which granted the bank a security interest in the vehicle under the Uniform Commercial Code. Furthermore, the defendant Bradshaw delivered the plaintiff a title certificate for the vehicle in question which was retained by the plaintiff bank to be returned to defendant Bradshaw at the time the collateral note secured by the vehicle was paid off.

In each of the seven appeals before us the defendant Bradshaw sold a used car to an individual defendant. Consideration was given for the purchase and a regular bill of sale was executed. However, in none of the cases did any of the individual defendants receive the certificate of title from the defendant Bradshaw. In most of the cases testimony was given that defendant Bradshaw agreed to have a certificate of title transferred to the individual purchaser or that the individual purchaser filled out a motor vehicle form to obtain a certificate of title which was left with the defendant Bradshaw. Of the collateral notes given on the respective vehicles, we observe that one of them was given after the sale of the vehicle to the individual purchaser (Case No. 54066) another apparently was given after the sale took place (Case No. 54064) and another was given on the same day of the sale (Case No. 54067). In the remaining cases each collateral note predated the sale.

The plaintiff bank, through its officers, became aware that a number of cars included in the floor-plan were not on the used car lot of the defendant Bradshaw. Therefore, after inquiry, in order to protect its interest the bank delivered the motor vehicle certificates of title to the Department of Motor Vehicles and obtained a notation on the certificates of title that the Rome Bank & Trust Company was the lien holder. This was done on October 20, 1976, almost one month after the last sale took place and almost three months after the first sale took place in the various cases. *Held:*

1. Complaint is made as to denial of the plaintiff bank's motion for summary judgment. In the absence of the grant of an interlocutory appeal, this denial was not appealable. *Marietta Yamaha v. Thomas,* 237 Ga. 840 (229 SE2d 753). Hence, we consider no questions with regard to the denial except those inextricably intertwined with the grant of the summary judgment for the defendants.

2. We now consider the grants of the motions for summary judgment in favor of defendant Bradshaw and the individual defendants. In support of its enumerations of error in this regard the plaintiff bank raises the following issues: (1) that an individual who purports to purchase a motor vehicle from a used car dealer does not acquire any interest in the vehicle when he does not receive a certificate of title to the vehicle; (2) the same individual purchaser who does not receive a certificate of title can not be a buyer in the ordinary course of business within the meaning of Code Ann. § 68-405a (Ga. L. 1961, pp. 68, 73; 1962, pp. 79, 80); (3) that under these circumstances if the purchaser is not, as a matter of law, precluded from being a buyer in the ordinary course of business, a jury question is presented as to whether the individual meets such requirements.

It is true, as the plaintiff bank contends, that Code Ann. § 68-415a (d) (Ga. L. 1961, pp. 68, 78) provides: "Except as provided in section 16 [68-416a] and as between the parties, a transfer by an owner is not effective until the provisions of this section and section 16 [68-416a] have been complied with and no purchaser or transferee shall acquire any right, title, or interest in and to a vehicle purchased by him unless and until he shall obtain from

the transferor the certificate of title thereto, duly transferred in accordance with the provisions of this section."

However, the Title Act is not exclusive as pointed out in *Hightower v. Berlin,* 129 Ga. App. 246 (3) (199 SE2d 335): "The Motor Vehicle Certificate of Title Act provides an additional method whereby title to motor vehicles can be proven but did not change the existing law as to the manner in which ownership of chattels including automobiles can be proven." See *Rockwin Corp. v. Kincaid,* 124 Ga. App. 570 (184 SE2d 509). Moreover, the essential question in the case sub judice is not limited to whether the individual defendants had title within the meaning of the Georgia Motor Vehicle Certificate of Title Act, but whether the bank had an enforceable lien against the vehicles in question.

In this regard, Code Ann. § 68-405a, supra, specifically sets forth the guiding principle here involved: "This Chapter does not apply to or effect a security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, but a buyer in the ordinary course of trade from the manufacturer or dealer takes free of the security interest."

It is clear from an examination of this section that the plaintiff bank only had a lien under the provisions of the Uniform Commercial Code. See Georgia UCC Ch. 109A-9—4 relative to filing and financing statements. This is further demonstrated by the security instrument which set up the floor-plan arrangement between the plaintiff bank and the defendant Bradshaw and which constantly refers to the Uniform Commercial Code and to its being controlled by the provisions of such Code. It is evidenced by the fact that the necessary filing was accomplished under the Georgia UCC. The plaintiff bank made no effort to timely perfect its security interest in the vehicles by complying with Code Ann. § 68-421a (a) (Ga. L. 1961, pp. 68, 83; 1962, pp. 79, 85; 1965, pp. 304, 311; 1969, pp. 92, 93). It was only after certain vehicles were unaccounted for that the bank filed with the Department of Motor Vehicles and obtained title certificates showing a lien on the vehicles involved in these seven cases.

In a long series of holdings this court has recognized

the clear command of the legislature as set out in Code Ann. § 68-405a that floor-planned vehicles held in inventory for sale by a dealer are not controlled by the Georgia Motor Vehicle Certificate of Title Act.

As succinctly stated in *Guardian Discount Co. v. Settles,* 114 Ga. App. 418, 421 (3) (151 SE2d 530): "[T]he Motor Vehicle Certificate of Title Act . . . has no application where the security interest is created by a manufacturer or a dealer." Accord, *Dunford v. Columbus Auto Auction,* 114 Ga. App. 407 (1) (151 SE2d 464). In *First Nat. Bank & Trust Co. v. Smithloff,* 119 Ga. App. 284, 287 (167 SE2d 190), we pointed out that, where there is floor-planning of a vehicle, perfection of a security interest in inventory would come under the Commercial Code and as to such security interest created by a dealer priority would be governed by Ga. UCC § 109A-9—307 (Code Ann. § 109A-9—307; Ga. L. 1962, pp. 156, 404, as amended), and Code Ann. § 68-405a. Accord, *Staley v. Phelan Finance Corp.,* 116 Ga. App. 1, 2 (156 SE2d 201); *First Nat. Bank &c. v. McElmurray,* 120 Ga. App. 134, 139 (4) (169 SE2d 720).

In states which have certificate of title acts the UCC has been held to control. Florida cases have found that a dealer who sells an automobile and delivers possession to a buyer has no interest to subject to a security interest, even though he retains the title certificate. Stroman v. Orlando Bank & Trust Co. (Fla. App.), 239 S2d 621. Accord, Correria v. Orlando Bank & Trust Co. (Fla. App.), 235 S2d 20. While a Pennsylvania court held that even where the dealer placed title in his name with notation of a finance company's encumbrance, the buyer could recover the certificate of title free and clear of all encumbrances under UCC § 9.307. Weisel v. McBride, 191 Pa. Super. 411 (156 A2d 613).

In summary it is clear from a reading of the agreement and the relevant statutory authority that between the dealer who holds a vehicle for sale and his creditor that there is no means for perfecting the lien under the Motor Vehicle Certificate of Title Act and that Act is clearly not applicable to their floor-plan arrangement. Thus, plaintiff's attempt to file under Code Ann. Ch. 68-4A was unavailing. Instead, the lending

institution must rely upon the provisions of the Uniform Commercial Code. However, Code Ann. § 109A-9—307 (1) (Ga. L. 1962, pp. 156, 404; 1963, pp. 188, 198; 1964, pp. 70, 74; 1969, p. 149; 1970, p. 604) states: "A buyer in ordinary course of business (subsection (9) of 109A-1—201) . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

"The limitations which this Section imposes on the persons who may take free of a security interest apply of course only to unauthorized sales by the debtor. If the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to the limitations of this Section." 4 Anderson 318, § 9.307:1 (2) Official Code Comment. There is nothing contained in the floor-plan arrangement which would indicate that the sales of the vehicles in these cases were unauthorized. Hence, even if the individual buyers were charged with notice of the lien, they would still not lose their protected status.

However, assuming the sales were unauthorized the buyers here would take free of any lien created by the floor-plan arrangement.

Once the buyer purchases the vehicle in the ordinary course of business, the lien which the lending institution holds vanishes. For the lender does not hold a security interest against such buyer. See Georgia UCC § 109A-9—307 and cases previously cited. It is therefore further clear that in such circumstances if the lender refuses to give the title certificate to the dealer so that the dealer can therefore transfer title to the buyer, the buyer may demand it since he is entitled to it. The lender in order to protect itself must rely on other avenues available to it under the provisions of the Commercial Code and commercial practice. Between the two, the party who must suffer the consequences of any loss that might occur is the lending institution and not the buyer, who is clearly excepted from the problem of dealer insecurity or insolvency.

The trial judge correctly granted the motions for summary judgment filed by the various defendants.

*Judgments affirmed. Shulman and Banke, JJ.,*

*concur.*

ARGUED JUNE 9, 1977 — DECIDED JULY 8, 1977 —
REHEARING DENIED JULY 29, 1977 —

*Rogers, Magruder & Hoyt, Joseph M. Seigler, Jr.,* for appellant.

*Duffey & Sawhill, Harl C. Duffey, Jr., Harvey C. Brown, Smith, Shaw, Maddox, Davidson & Graham, Jim M. Foss, Jackson B. Harris, Fuller & Schiller, William M. Schiller, Covington, Kilpatrick & Storey, J. S. Kilpatrick, J. Bryant Durham, Jr., Robert J. Evans,* for appellees.