69265, 69364. OWENSBORO NATIONAL BANK v. JENKINS;
and vice versa.
(328 SE2d 399)

BEASLEY, Judge.

Plaintiff Owensboro National Bank ("Bank") brought an action seeking a writ of possession for a 1981 Buick Riviera. The complaint alleged that on May 27, 1982, automobile dealer Matthews Motors, Inc. ("Matthews Motors") by installment note and security agreement, granted a security interest in the Buick to the Bank based on a leasing agreement between Matthews Motors and defendant Jenkins as lessee, which was assigned to the Bank; that Matthews Motors had defaulted on payments under the note and defendant had failed to make payments under the lease; that Jenkins was in possession of the Buick and refused to surrender possession of it.

Jenkins answered, denying the material allegations of the com-

plaint, and seeking by counterclaim a declaration that title to the vehicle was vested in him. In the counterclaim it was asserted that Matthews sold the vehicle to him on April 5, 1982, and since that time he had been in lawful possession.

After discovery both sides moved for summary judgment, which motions were denied. The case was tried by the court with a written stipulation of the evidence.

The trial court found the following facts. The defendant Jenkins was engaged as a dealer in used and salvage trucks and equipment, operating his business in LaFayette, Georgia. Matthews Motors, an Indiana corporation, owned and operated a GM dealership in Rockport, Indiana. The president of Matthews Motors was Michael Matthews, whom the defendant had met in connection with his business in 1979. Around April 1, 1982 in LaFayette, defendant agreed with Michael Matthews to purchase the Buick for $11,500. On April 5, two employees of defendant traveled to Rockport, and received delivery of the vehicle plus an invoice from Matthews Motors. The vehicle and invoice were brought to Georgia by one of the employees who delivered possession to the defendant. The defendant has been in possession since that time. On April 12, 1982, a trade and financial agreement was executed by defendant, the original being given to Michael Matthews. The agreement reflected that Matthews Motors received $11,500 credit for the 1981 Buick as part of a transaction whereby defendant sold five dump trucks to Matthews Motors and received some salvage vehicles plus the Buick.

The court further found that the defendant was a buyer in the ordinary course of business from Matthews Motors and purchased the Buick in good faith and without knowledge of ownership rights or security interest of a third party. After the sale took place, on May 27, 1982, Michael Matthews as president of Matthews Motors executed a promissory note to the Bank for $12,600, pledging as security the Buick, executed a security agreement, and assigned a purported leasing agreement on the vehicle. Defendant denied he signed the vehicle lease agreement and stated he did not authorize Matthews or any one else to sign for him. A manufacturer's certificate of origin for the Buick, which the Bank had, showed that as of May 27, 1982, Matthews Motors listed the plaintiff as having a security interest in the vehicle.

Plaintiff Bank's senior vice president testified the Bank had done business with Matthews Motors since 1975, had conducted numerous financial transactions and had floor planned its inventory. He testified that in May 1982 Matthews Motors was in financial "ill health" and filed a Chapter 11 Reorganization under the Bankruptcy Act in July 1982.

The trial court denied the Bank's claim for relief and entered judgment on Jenkins' counterclaim based on the following conclusions

of law. 1) Since no foreign law was pleaded or proven, Georgia law would be applied. *Capital Auto. Co. v. Continental &c. Corp.*, 117 Ga. App. 451 (1) (160 SE2d 836) (1968); *Trustees of Jesse Parker Williams Hosp. v. Nisbet*, 189 Ga. 807 (1) (7 SE2d 737) (1940). 2) The defendant purchased the 1981 Buick on April 5, 1982 for his wife and for household use, not as part of his inventory. In such transaction, he was a buyer in the ordinary course of business who took free of any security interest created by his seller. OCGA § 11-9-307. 3) Plaintiff had a valid security interest in the 1981 Buick. 4) The Georgia Motor Vehicle Certificate of Title Act is not the only method whereby title or ownership may be proven and did not change the existing law as to the manner of proving ownership. *First Nat. Bank &c. Co. v. Smithloff*, 119 Ga. App. 284, 287 (167 SE2d 190) (1969); *Rockwin Corp. v. Kincaid*, 124 Ga. App. 570 (184 SE2d 509) (1971); *Hightower v. Berlin*, 129 Ga. App. 246 (3) (199 SE2d 335) (1973). 5) As a buyer in the ordinary course of business the defendant took the vehicle free of any security interest created by his seller even if the security interest was perfected and the buyer knew of its existence. *Rome Bank &c. Co. v. Bradshaw*, 143 Ga. App. 152 (237 SE2d 612) (1977). 6) Defendant was the owner of the vehicle and was entitled to judgment and the title to the Buick.

The plaintiff Bank appeals from the denial of its claim for possession and the judgment awarding defendant title to the vehicle. The defendant Jenkins cross appeals and asks that we strike that portion of the judgment stating the conclusion of law that plaintiff had a security interest in the Buick. *Held*:

1. Although the trial judge's *ratio decidendi* is persuasive, we predicate our basis for affirmance on more elementary principles. Here there was no certificate of title but only a certificate of origin. (The vehicle apparently was being used as a demonstrator while being held for sale by dealer Matthews Motors; the sales invoice refers to it as a "demo.") In this regard OCGA § 40-3-4 states: "No certificate of title need be obtained for: . . . (2) A vehicle owned by a manufacturer of or dealer in vehicles and held for sale, even though incidentally used on the highway or used for purpose of testing or demonstration; or a vehicle used by a manufacturer solely for testing; except that all dealers acquiring new vehicles after July 1, 1962, from a manufacturer for resale shall obtain such evidence of origin of title from the manufacturer as the commissioner shall by rule and regulation prescribe; . . . ." The commissioner has promulgated the following pertinent rule: "An application for the first certificate of title of a new car must be accompanied by a Manufacturer's Certificate of Origin." 560-10-12-.01, Rules of Department of Revenue Motor Vehicle Unit.

Concerning the application for the first certificate of title, Georgia law details the process by which a certificate is obtained. As set

forth in OCGA § 40-3-22 (b): "The *application* shall be signed by the dealer as well as the owner, and the *dealer shall promptly mail* or *deliver it* to the commissioner or his appropriate authorized county tag agent so as to have the application submitted to the commissioner or his appropriate authorized county tag agent within 90 days from the date of the sale of the vehicle. If the application is not submitted within that time, *the dealer,* or in nondealer sales the transferee, *shall be required to pay a penalty* of $10.00 in addition to the ordinary title fee paid by the transferee provided for in this chapter. If the documents submitted in support of the title application are rejected, the *dealer submitting the documents shall have 60 days* from the date of initial rejection *to resubmit the documents* required by the commissioner for the issuance of a certificate of title. *Should* the *documents not be properly resubmitted* within 60 days, there shall be *an additional penalty* of $10.00 *assessed against the dealer.* The *willful failure of a dealer to obtain a certificate of title for a purchaser shall be grounds for suspension* or *revocation of the dealer's* state-issued *license* and registration for the sale of motor vehicles." (Emphasis supplied.)

It is true that OCGA § 40-3-31 (d) contains blanket language that "Except as provided in Code Section 40-3-32 and *as between the parties,* a transfer by an owner is not effective until this Code section and Code Section 40-3-32 have been complied with; and no purchaser or transferee shall acquire any right, title, or interest in and to a vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred in accordance with this Code section." (Emphasis supplied.) However, as the trial judge noted, even that all-encompassing language is not without exception or further delineation. As this court held in *Hightower v. Berlin,* 129 Ga. App. 246, 248, supra, "The Georgia Title Certificate Law does indeed provide a simple statutory method of proving ownership to motor vehicles but it is not exclusive. The statute provides that the certificate of title is prima facie evidence of the facts appearing in the certificate, including the name of the owner. The statute did not change the existing case law as to the manner in which ownership of chattels including automobiles could be proven." (Cits. omitted.) The certificate is not the title or ownership itself but only evidence of it.

As to the obtaining of a first certificate of title, the law is unremitting in its insistence that the burden is on the dealer to insure that the purchaser receives the proper credentials of title, as the quotations from OCGA § 40-3-22 (b) clearly establish. Moreover, a considerable lapse of time may occur before the first certificate of title is issued as evidenced by the 90-day limit and 60-day limit found in that section. That being true, can it be said that a purchaser of a vehicle on which a certificate of title has not been previously issued

holds no title during that often protracted time between the actual purchase and the issuance of title? To pose the question is to answer it, for clearly the strict language of OCGA § 40-3-31 is not applicable to such a situation. *Rockwin Corp. v. Kincaid*, 124 Ga. App. 570, 571-2, supra. Were it otherwise, the seller who has the proceeds of sale could prevent title, i.e., ownership, from passing to the buyer who had parted with good consideration for it, by simply failing or refusing to take the required steps to obtain the new certificate. That is precisely what happened here, despite the buyer's repeated requests for the title certificate from the dealer. The trial judge was authorized to find that title passed on April 5, 1982, and Matthews Motors retained no interest in it whatsoever. The purported lease agreement was fictitious.

Since a security interest attaches only to the extent of the debtor's interest, the transactions of May 27, 1984 are simply of no consequence. "[O]ne cannot encumber another man's property in the absence of consent, estoppel or some other special rule." *First Nat. Bank &c. Co. v. McElmurray*, 120 Ga. App. 134, 138 (2) (c) (169 SE2d 720) (1969).

Any alleged consent by defendant was denied by his testimony, corroborated by other testimony and evidence, that he did not sign the purported leasing agreement. There is likewise no basis for estoppel since there is no evidence that he caused the Bank to act to its detriment. The fact that the law itself permits the possibility of lengthy delay between the time of a sale and the time title issues means of necessity there will be a period of time when there is no title certificate and no amount of diligence will protect a purchaser or security holder from the machinations of an unscrupulous dealer. In such circumstances he can pledge the property to another and for a time no one will be the wiser. Nevertheless, our law places the responsibility and trust for the delivery of the proper papers to the Commissioner of Revenue upon the dealer, not the consumer. As it now stands, transfer by certificate of title with its commensurate safeguards of having security interests and liens on the document itself, is applicable only where a certificate exists.

It was not error to find that title was in the defendant Jenkins.

2. In view of our ruling on the main appeal, while recognizing the language in the judgment as to plaintiff's security interest in the 1981 Buick was erroneous, it is unnecessary to pass upon the cross-appeal.

*Judgment affirmed in 69265. Appeal dismissed in 69364. Carley, J., concurs. Birdsong, P. J., concurs in the judgment only.*

DECIDED MARCH 11, 1985.

*Jon Bolling Wood*, for appellant.

*William Ralph Hill, Jr.*, for appellee.