72270. SOUTHWEST GEORGIA PRODUCTION CREDIT ASSOCIATION v. JAMES.
(350 SE2d 786)

POPE, Judge.

Appellee Lynorris James, d/b/a J. & W. Enterprises, filed this suit for declaratory judgment against appellant Southwest Georgia Production Credit Association and Southern Frozen Foods. James sought funds held by Southern Frozen Foods but claimed by both himself and Southwest. Southern Frozen Foods paid said funds into court, and James amended his action, dismissing Southern Frozen Foods and interpleading for the funds. The case was presented to the trial court for resolution without the intervention of a jury, and the court entered judgment in favor of James. Southwest brings this appeal.

The trial court made the following findings of fact and conclusions of law: "On April 11, 1983 Southwest filed a financing statement listing Mrs. Blanche Hasty Whaley as debtor and covering crops of whatever kind grown on the Whaley land within seven years from the date of the financing statement. The financing statement described the land as being fifteen hundred and fourteen acres, more or less, and designated land lots in the tenth land district of Randolph County and three hundred and sixteen acres in designated land lots in the fifth land district of Randolph County. On July 2, 1984 Whaley entered into a joint [venture] agreement with James, under the terms of which James was to grow crops on the Whaley land. The agreement provided that James would provide the labor, fuel, chemicals, seed, fertilizer and repair, to plant and harvest all the crops. The agreement further provided that after crops are harvested and bills paid,

the remaining money would be equally divided between the partners. The entire crop grown by James was peas, with the seed furnished by Southern Frozen Foods. Southwest did not provide any funds for the growing of this crop. The gross proceeds from the crop amounted to $64,682.82, while the cost of producing the crop was $99,639.52. This produced a loss of $34,956.70. Under the terms of the agreement between James and Whaley, Whaley never acquired any right to any of the proceeds from the crop.

"Southern Frozen Foods, after being notified that Southwest was claiming an interest in the proceeds of the crop because of the 1983 financing statement, refused to issue its check to James in payment for the crop. On December 17, 1984 Southwest, in writing, stipulated that they were claiming only one-half of the pea crop proceeds and acknowledged that the total gross proceeds from the crop was in the amount of $64,682.82 and that one-half of the proceeds, or $32,341.41, could be released by Southern Frozen Foods to James. The stipulation further provided that the debt owed Southern Frozen Foods for pea seed could be divided with one-half charged to the proceeds held by Southern Frozen Foods and one-half charged against the funds being released to James. Southern Frozen Foods has paid into the registry of the Court the sum of $24,745.16 and has been dismissed as a party to this action.

"Georgia Code Section 11-9-203 provides in part as follows: '(1) . . . a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless: . . . (b) Value has been given; [and] (c) The debtor has rights in the collateral.' A security interest can attach only to the extent of the debtor's interest. *First National Bank and Trust Company v. Smithloff*, 119 Ga. App. 284 [(5) (167 SE2d 190) (1969)]. Since Whaley never acquired any interest in the proceeds of the pea crop, she had no rights in Southwest's claimed collateral to which its security interest could attach." (Indention omitted.)

We reverse the judgment of the trial court. The record discloses a properly filed security interest by Southwest covering all crops "now growing or may hereafter be planted, grown or produced within seven years from the date hereof" and all proceeds therefrom on the described property of Whaley. This filing was sufficient to attach the pea crop in question, see *United States v. Big Z Whse.*, 311 FSupp. 283 (S.D. Ga. 1970), and the proceeds therefrom, see OCGA § 11-9-306 (1). However, James argues that under the terms of their agreement, Whaley (Southwest's debtor) acquired no rights in the subject pea crop or the proceeds therefrom until such time as a profit was made from the crop; at such time she would be entitled to one-half of the profit from the proceeds. As no profit was made, James contends that Whaley at no time acquired any rights in either the pea crop or

the proceeds therefrom.

As noted by the trial court, a security interest in collateral does not attach unless the debtor has rights in the collateral. OCGA § 11-9-203 (1) (c). Furthermore, "[w]hile the Commercial Code does not specifically say so, it is self-evident that in the absence of special circumstances a security interest can attach only to the extent of the interest of the debtor." *First Nat. Bank &c. v. Smithloff*, supra at 290. There is nothing in the record here to counter the presumption that Whaley, at the time she entered into a financing arrangement with Southwest, was the sole owner of any and all crops, in praesenti or in futuro, planted, grown or produced on the described property. See 25 CJS, Crops, § 5. Cf. *Lane v. Happ Bros. Co.*, 44 Ga. App. 577 (1) (162 SE 519) (1932). She thus had "rights," albeit inchoate rights, in any and all crops to be planted, grown or produced on her property in the future and pursuant to the terms of her agreement with Southwest, she transferred those rights for a period of seven years or until the indebtedness was paid. A debtor (such as Whaley in this case) may not defeat the rights so acquired by the creditor (Southwest) by turning over the property described in the financing statement to a third party to produce a crop covered by the terms of the financing statement, where said statement has been executed and recorded according to law. From the recorded financing statement, James had legal notice of the security interest that Southwest held on the crop to be produced which secured the payment of an outstanding indebtedness. Thus, he could not defeat that security interest by operation of the subsequent joint venture agreement made between Whaley and himself to which Southwest was not a party, and where Southwest had not consented to such agreement and the waiver of its prior interest. See *Neal v. Bradenton Production &c. Assn.*, 146 Fla. 208 (200 S 845) (1941). Compare *Cash Crops Co-op. v. Green Giant Co.*, 263 Wis. 353 (57 NW2d 376) (1953). See generally *Continental American &c. Ins. Co. v. Griffin*, 251 Ga. 412, 414 (306 SE2d 285) (1983); *Downing Co. v. Jones*, 50 Ga. App. 9 (176 SE 904) (1934).

Southwest's security interest in the subject pea crop attached at the time the crop was planted. See OCGA § 11-9-203 (2); *United States v. Minster Farmers Co-op.*, 430 FSupp. 566 (1) (N. D. Ohio 1977); *United States v. Greenwich Mill &c. Co.*, 291 FSupp. 609 (1) (N. D. Ohio 1968). See also *Bank of Cusseta v. Ellaville Guano Co.*, 143 Ga. 312 (85 SE 119) (1915). It follows from the foregoing discussion that any rights of James in the pea crop at issue were subject to Southwest's prior security interest. Accordingly, the trial court erred in awarding the proceeds from that crop to James.

*Judgment reversed. McMurray, P. J., and Carley, J., concur.*

DECIDED OCTOBER 29, 1986 —
REHEARING DENIED NOVEMBER 10, 1986

*Henry O. Jones III*, for appellant.
*David N. Rainwater*, for appellee.