A98A1148, A98A1149. RUSSELL et al. v. LAWRENCE;
and vice versa.
(507 SE2d 161)

Judge Harold R. Banke.

Emerson Russell and Angela Russell sued Marie Lawrence to assert entitlement to ten horses. The Russells appeal the summary judgment granted to Lawrence.

Marie Lawrence and her aunt, Tommie Jordan, jointly operated a horse business known as Cheval Farms. Unbeknownst to Lawrence, Jordan registered the horses with national horse associations solely in her own name. In the summer of 1994, after their business relationship deteriorated, Jordan sued to evict Lawrence, who then counterclaimed for the ownership of certain horses and equipment. In October 1994, the trial court issued a temporary order giving interim custody of eight horses to Jordan and eight horses to Lawrence. The order provided, "Plaintiff [Jordan] shall retain the following horses which are in dispute: [eight by name] any and all other horses in which the [sic] both parties have any claimed mutual and/or possible interest." The order directed both parties to maintain the horses in an unaltered state unless both parties agreed to a change in writing.

During the pendency of that lawsuit but before the temporary order dividing the horses, Jordan signed a 90-day promissory note in the amount of $10,200 on September 18, 1995, in favor of the Russells. The Russells filed a UCC-1 financing statement which listed

ten horses and a tractor as collateral.[1] A few months later, the Russells offered to purchase Cheval Farms for $318,000 from Jordan. This purchase offer agreement included the realty, certain horses, as well as "all horses and equipment as described in UCC-1 from Tommie D. Jordan to Emerson E. Russell." Shortly thereafter, the Russells bought Cheval Farms from Jordan for the full $318,000, even though Jordan had not repaid the 90-day note.

The litigation between Jordan and Lawrence resulted in a split jury verdict with five horses being awarded to Jordan and ten to Lawrence. Lawrence gained possession of her horses from the Russells by levy on the judgment. Four days after the verdict, the Russells brought the instant action against Lawrence claiming they had superior title to all of the horses that the jury determined belonged to Lawrence. They asserted that they were "bona fide purchasers of the horses" and that they obtained good title to the horses under the UCC by "virtue of foreclosure."

It is undisputed that no actual foreclosure under the UCC occurred. Emerson Russell testified, without contradiction, that when he paid $318,000 for the farm, stock, and equipment, he "wiped clean" the outstanding loan balance of $10,558.45 owed by Jordan. Russell admitted that he knew about a lawsuit between Jordan and Lawrence and testified that he told Jordan, "Get the thing settled before we close." A few days later, Jordan allegedly informed Russell that she and Lawrence had settled the case.

The trial court granted summary judgment to Lawrence after finding as a matter of law that the "counterclaim filed by Defendant Lawrence in 94CV27,928 seeking an interest in the horses and equipment constituted a statutory Lis Pendens notice under OCGA § 23-1-18 so that the interest that the Defendant Lawrence got through the jury verdict and judgment in the Catoosa County lawsuit defeats any claim that the Plaintiffs above [the Russells] have to the horses and equipment under the security interest and transfer from Jordan to the Plaintiffs." The trial court also granted summary judgment to the Russells on Lawrence's claim for damages for stubborn litigiousness. The Russells appeal, and Lawrence cross-appeals. *Held*:

### Case No. A98A1148

The Russells contend that the trial court erred in ruling that a pending lawsuit which sought an interest in personalty could act as a statutory lis pendens to defeat a subsequent sale of that personalty

---

[1] The financing statement did not list the horses by name but by their breed and purported registration numbers.

from a person with voidable title to a good faith purchaser for value. They claim that a lis pendens is solely for the protection of real property. We agree but, nevertheless, affirm the judgment below on other grounds. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991) (judgment right for any reason will be affirmed).

The general notice of equity or a claim that arises by operation of OCGA § 23-1-18 protects innocent purchasers of real property involved in pending litigation. *Patent Scaffolding Co. v. Byers*, 220 Ga. 426, 433 (139 SE2d 332) (1964). Hence, that statute did not apply here. Compare *Puryear v. Deakins*, 258 Ga. 618, 619 (373 SE2d 15) (1988).

The Russells essentially assert their entitlement to the horses on two distinct grounds: as the collateral for a secured transaction under the UCC and under the terms of the real estate sales contract. But a security interest in collateral does not attach unless the debtor has rights in that collateral. OCGA § 11-9-203 (1) (c). *Southwest Ga. Production Credit Assn. v. James*, 180 Ga. App. 795, 797 (350 SE2d 786) (1986). Inasmuch as the collateral at issue belonged to Lawrence, not Jordan, Jordan had no interest therein to transfer to the Russells. *First Nat. Bank &c. v. Smithloff*, 119 Ga. App. 284, 290 (5) (167 SE2d 190) (1969). "One cannot encumber another [person's] property in the absence of consent, estoppel, or some other special rule. [Cit.]" Id.

The Russells contend that they acquired title to the horses when they purchased the farm. They argue that as good faith purchasers for value, they obtained buyers' rights under OCGA § 11-2-403 (1) because Jordan held voidable title at the time of the transfer and Jordan could act as an agent for Lawrence. We disagree.

The Russells' agency argument requires disregarding the court order directing Jordan to "retain" the horses "in an unaltered state" unless she obtained the written consent of Lawrence. Compare *Benton v. Duvall Livestock Marketing*, 201 Ga. App. 430, 431 (1) (411 SE2d 307) (1991). Although the sales agreement specifically included the horses listed on the UCC-1 filing, Jordan had no legal right to sell what she did not own. Moreover, the Russells offer no applicable authority to show that by merely registering the horses with national associations, Jordan obtained voidable title to the horses. Compare *Charles Evans BMW v. Williams*, 196 Ga. App. 230, 232 (2) (395 SE2d 650) (1990) (good faith purchaser for value must show observance of reasonable commercial standards in the trade).

The judgment of the superior court in the earlier case, once entered into evidence, was conclusive as to the ownership of the horses. *McGraw v. Smith*, 232 Ga. App. 513, 514 (502 SE2d 347) (1998). Thus, the judgment which Lawrence obtained operated as an estoppel against the Russells in this case. *Tootle v. Player*, 225 Ga.

431, 432 (2) (169 SE2d 340) (1969). See *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532, 535 (3) (478 SE2d 601) (1996) (estoppel by judgment prevents relitigation in a subsequent suit of a matter previously adjudicated). Plainly, the Russells sued the wrong party.

*Case No. A98A1149*

In a cross-appeal, Lawrence contends that the trial court erred in granting partial summary judgment to the Russells on the issue of stubborn litigiousness. We agree and reverse. Lawrence counterclaimed for the loss of use of two horses retained by the Russells, interference with her development of an equestrian riding, boarding and breeding business, and for causing her unnecessary trouble in obtaining the registration papers for the horses awarded to her by judgment. Inasmuch as Lawrence asserted a viable independent counterclaim, she is not foreclosed from recovering the expenses of litigation under OCGA § 13-6-11. *Glenn v. Fourteen West Realty*, 169 Ga. App. 549, 551 (2) (313 SE2d 730) (1984). Because questions of bad faith, stubborn litigiousness, and causing unnecessary trouble are matters for jury determination, we reverse. *Tab Sales v. D & D Distrib.*, 153 Ga. App. 779, 780 (2) (266 SE2d 558) (1980).

*Judgment affirmed in Case No. A98A1148. Judgment reversed in Case No. A98A1149. Johnson, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 14, 1998 —
RECONSIDERATION DENIED OCTOBER 5, 1998 — ■

*Renzo S. Wiggins*, for appellants.
*David T. Blackburn*, for appellee.