A01A1787. LAWRENCE v. RUSSELL et al.
(563 SE2d 884)

SMITH, Presiding Judge.

Marie Lawrence appeals from the trial court's grant of judgment notwithstanding the verdict to Emerson and Angela Russell on Lawrence's counterclaim against them for damages in trover, tortious interference with her horse breeding and riding business, and for attorney fees under OCGA § 13-6-11. We conclude that the trial court

---

[23] *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993).
[24] See *Jackson*, supra.

correctly granted the Russells' motion for judgment n.o.v., and, although we do not agree completely with the trial court's reasoning, we affirm.

This is the second appearance of this case in this court, but its history and background also embrace another lawsuit. As recounted in *Russell v. Lawrence*, 234 Ga. App. 612 (507 SE2d 161) (1998), Lawrence and her aunt, Tommie Jordan, jointly operated a horse farm. Their relationship deteriorated, and Jordan filed suit to evict Lawrence, who counterclaimed for entitlement to certain horses and equipment. A temporary order was entered in that lawsuit giving interim possession of eight horses to Jordan and eight to Lawrence. The order also directed that the horses be maintained in unaltered state unless a change were agreed to in writing. Id. Before this temporary order was entered, Jordan borrowed $10,200 from the Russells and gave ten horses and a tractor as collateral, which were listed on a UCC-1 financing statement filed by the Russells. Id. at 612-613. Several months later, the Russells purchased the horse farm from Jordan for $318,000. Their purchase purported to include "all horses and equipment as described in [the] UCC-1" financing statement. Id. at 613.

The litigation between Lawrence and Jordan ended with five horses being awarded to Jordan and ten horses being awarded to Lawrence. Lawrence executed immediately on that judgment, gaining possession of the horses awarded to her from the Russells. The Russells then instituted this litigation against Lawrence. Although the Russells admitted they knew about the litigation when they purchased the farm, they claimed that Jordan had informed them the suit had been settled and that they had superior title to the horses claimed by Lawrence. They also claimed that Lawrence had trespassed upon their property when she reclaimed her horses. Lawrence counterclaimed, asserting claims in trover and for interfering with her business. In *Russell*, we affirmed a grant of summary judgment to Lawrence on the Russells' claim of entitlement to the horses, finding that the judgment entered in the Jordan litigation acted as an estoppel against the Russells. Id. at 614. We also reversed the trial court's grant of summary judgment to the Russells on Lawrence's claim for attorney fees under OCGA § 13-6-11, holding that Lawrence's counterclaim for the loss of use of two horses and interference with her development of a riding and breeding business was a "viable independent counterclaim" and that questions of bad faith, stubborn litigiousness, and causing unnecessary trouble must be decided by the jury. Id. at 615.

The case then returned to the trial court, where a jury trial was held on the Russells' remaining claims for trespass and attorney fees and Lawrence's counterclaim for damages and attorney fees. Law-

rence's primary claim for damages was based upon the gelding of one of her stallions before the horses were returned. She also claimed damages for the loss of anticipated profits from the riding stables. At the close of Lawrence's evidence, the Russells moved for a directed verdict on the counterclaim and Lawrence's claim for attorney fees and expenses of litigation. The trial court denied the motion "at this point and time" while conceding that the motion "might be right on some of these points." The jury came back with a verdict awarding the Russells $1 on their claim for damages against Lawrence for trespass and nothing on their claim for attorney fees and litigation expenses. The jury awarded Lawrence $150,000 on her claim for damages and $16,190.30 on her claim for attorney fees and expenses. The Russells moved for judgment n.o.v., and Lawrence opposed it.

The trial court granted the motion, finding that the jury's award to Lawrence was insupportable under the evidence presented at trial. The trial court first noted that although Lawrence had presented two theories of recovery, trover and damage to her business, the jury's award was obviously based upon the loss of the future value of one of the horses as a stud, but that no evidence was presented that the Russells had any involvement in the horse's gelding. The trial court also noted that even if the damages could be construed to be based upon loss of use of the horses for riding rentals or on loss of stud fees for the other horses, Lawrence's evidence was insufficient for various reasons. The trial court also found the award to Lawrence insupportable based upon the trover claim, because Lawrence presented evidence only of gross figures for business damages, without taking into account her business expenses. As to the award for attorney fees, the trial court found that no award could be made, because in presenting her evidence, Lawrence did not segregate the fees paid to defend the Russells' action from those expended to prosecute her counterclaim.

1. Lawrence contends that in reversing the jury's award to her on her counterclaim, the trial court failed to give full force and effect to the ruling of this court in *Russell*, supra. She apparently bases her contention on the fact that we asserted in our opinion in the earlier appeal that "Lawrence asserted a viable independent counterclaim." Id. at 615. She argues that this became the law of the case and that the trial court ignored this when it entered judgment n.o.v. We do not agree.

The statement in *Russell* that Lawrence had asserted a viable independent counterclaim did not suggest that she should *prevail* on that counterclaim or that proper proof was unnecessary. We simply stated that summary judgment as to Lawrence's claim for attorney fees was not warranted at that point, because Lawrence had *asserted* a valid counterclaim.

As pointed out by the trial court, it is apparent the jury's award

of $150,000 to Lawrence was based upon Lawrence's estimate of the lost anticipated stud value of one particular horse, Rowdy. The award returned by the jury was $150,000. That was the exact figure claimed by Lawrence for the loss of anticipated revenue to the breeding business she hoped to develop because of Rowdy's gelding. See generally *Taylor v. Smith*, 159 Ga. App. 797, 799 (1) (285 SE2d 200) (1981) (clear that jury found for plaintiffs under contract because recovery was for amount stipulated in contract). Lawrence estimated that her loss for the anticipated profits of the riding stable from boarding and riding rentals was only $32,400.

"A judgment n.o.v. is properly granted only when there can be but one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion." *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 646 (522 SE2d 467) (1999). In considering whether to grant judgment n.o.v., the trial court

> should not rely upon certain evidence merely because it is not specifically contradicted, while disregarding other relevant evidence which may be equally undisputed. In reviewing the grant of a judgment n.o.v., an appellate court must decide whether *all* the evidence *demanded it*, or whether there was *some* evidence *supporting the verdict* of the jury. A judgment notwithstanding the verdict is improperly granted in the face of conflicting evidence.

(Citations and punctuation omitted.) Id. at 646-647.

In this case, Lawrence presented no probative evidence that the Russells were responsible for this loss. In fact, Rowdy was gelded on October 3, 1995, when he was in the possession of Jordan, and approximately three months before the Russells bought Jordan's farm. Lawrence testified only that she believed the Russells were "intimately involved" with Jordan's farm even before they bought it, but that she really did not know who ordered the gelding. Lawrence testified that she did not know who was responsible for the gelding but she believed nevertheless that the Russells were involved. She testified, however, that if Jordan had Rowdy gelded, Jordan was responsible for the lost stud fees.

Against this evidence, the Russells presented positive evidence that they did not have Rowdy gelded. Emerson Russell confirmed this explanation. Russell denied that he and his wife had anything to do with Rowdy's gelding. The veterinarian who performed the gelding testified on his deposition, which was introduced into evidence, that the decision to geld Rowdy was Jordan's and that he did not rec-

ognize the Russells or their farm manager and had never had dealings with them. Although the veterinarian bill for the gelding introduced into evidence showed the Russells' farm as the party billed, that was explained by the deposition testimony of another veterinarian in the practice, which was entered into evidence. He testified that the fee for the gelding was paid when it was performed, but the printout of that bill showing the Russells as the billing party was generated the day before his deposition, and it simply reflected the current name on the account as the party billed. He testified that the name on the account was changed when Jordan informed the vet's office of the change in November 1996.

It is well established that

> [c]ircumstantial evidence from which the existence of a fact might be inferred, but which did not demand a finding for the plaintiff to that effect, will not support a verdict, when by positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed.

(Footnote omitted.) *Camp v. Eichelkraut*, 246 Ga. App. 275, 282 (539 SE2d 588) (2000). The circumstantial evidence showing that the Russells had some business dealings with Jordan before the sale of the farm and horses does not demand the conclusion that the Russells participated in the decision to geld Rowdy. It therefore amounts only to an inconclusive inference, which cannot overcome the direct evidence that the decision to geld Rowdy was made by Jordan alone and that the Russells had nothing to do with that decision. The award for the damage to Rowdy's future value as a stud horse is therefore completely unsupported, and the trial court did not err in granting the Russells' motion for judgment n.o.v. on this issue.

2. Because it is apparent that the jury's award of $150,000 to Lawrence was for the damage to the future value of Rowdy as a stud horse, the trial court's recitation in its order of other bases for its grant of the Russells' motion for judgment n.o.v. is immaterial. We note, however, that we do not decide whether the trial court correctly ruled that Lawrence could not recover in trover because her proof of loss of future profits was insufficient, being based upon gross, rather than net, figures. In support of its conclusion, the trial court cited *Adams Refrigerated Express v. Ingol*, 176 Ga. App. 457 (336 SE2d 289) (1985). We held in *Ingol* that when

> property or equipment acquires a particular capability of producing income because of a specific use, arguably its hire

value could be measured by its income production. However, we conclude that in a trover action concerning revenue-generating, non-unique personalty, where the plaintiff elects to seek return of the property and its hire, hire value must be the reasonable rental value of the property, and not its capability for revenue generation.

Id. at 459 (1). We find nothing in *Ingol* suggesting that a net figure must be used. Moreover, in this case, after the decision in *Russell*, the horses were in Lawrence's possession, and therefore this principle is not applicable.

[I]n an action for conversion, the measure of damages as set forth in OCGA § 44-12-152 applies only when the property continues to be "unlawfully detained." When a party elects to sue for damages for conversion and the property has been returned before trial, as here, the damages are limited to recovery for the diminution in value of the property only for the time period between the alleged conversion and the property's return.

(Citations and punctuation omitted.) *Lamb v. Salvage Disposal Co.,* 244 Ga. App. 193, 196 (535 SE2d 258) (2000) (physical precedent only).

3. Lawrence contends the trial court also failed to give full force and effect to the ruling of this court in *Russell*, supra, on the issue of her right to recover attorney fees. Again, Lawrence appears to rely on this court's statement in *Russell* that Lawrence was "not foreclosed from recovering" attorney fees and expenses of litigation because she had asserted a "viable independent counterclaim." Id. at 615. Again, however, that statement ruled only that Lawrence had a *right* to recover attorney fees; it did not dispense with the need for her to prove such a claim in proper fashion.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 26, 2002 —
RECONSIDERATION DENIED APRIL 10, 2002.

*David T. Blackburn*, for appellant.
*Renzo S. Wiggins*, for appellees.