A04A0246. MEDLIN v. MORGANSTERN et al.
(601 SE2d 359)

MIKELL, Judge.

At issue in this appeal is the ownership and possession of a colt born to a Paso Fino mare named La Titicaca EZG. Plaintiff/appellant Sandye Medlin claims that the colt belongs to her and that defendants/appellees Steven and Barbra Morganstern, who currently possess the colt, tortiously interfered with a contract providing that she would receive the animal. The trial court granted summary judgment to the Morgansterns. We agree with the trial court that no genuine issue of material fact remains on the tortious interference claim. However, a fact issue remains on whether the colt belongs to Medlin. We therefore affirm in part and reverse in part.

> Summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case. A movant for summary judgment who is a defendant may discharge his burden by pointing out by

reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the non-moving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

On appeal from the grant of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence.[2]

Viewed most favorably to Medlin, the evidence shows that beginning in late February or early March 2001, she trained the Paso Fino mare in preparation for a horse show at the request of defendant Lois March, who owned the mare at that time. Medlin stated that she continued to board and train the mare for several months after the April show. March and Medlin entered into a written agreement on May 1, 2001, providing that March would allow Medlin to breed the mare with Medlin's stallion, and Medlin would keep the foal which was likely to result from the union. In return for the foal, Medlin agreed to continue to board, train, and show the mare at no charge. In addition, Medlin agreed to use her best efforts to sell the mare for March.

The mare was successfully bred to the stallion in June 2001. March then agreed to trade the pregnant mare to Marsha Sielbeck as a down payment on a Marchadora mare imported from Brazil. Medlin was aware of the transaction but believed that March would remain the registered owner of the Paso Fino mare in order to preserve Medlin's right to the foal. Medlin transported the mare to March's farm in September 2001 knowing that March was taking the mare to north Georgia to be picked up by Sielbeck.

March delivered the Paso Fino mare to Sielbeck on September 22, 2001, at the Morningstar Horse Farm in Summerville, which is owned and operated by Steven and Barbra Morganstern. Steven Morganstern averred that he was aware that March was trading the mare to Sielbeck, but neither he nor his wife knew that the mare was pregnant. Morganstern witnessed March give Sielbeck the mare's ownership documents. Sielbeck, who was indebted to the Morgansterns for certain equestrian equipment, asked them to care for the mare until mid-October, when she could arrange for its transfer to her home in Ohio. Meanwhile, Sielbeck failed to pay the Morgansterns for the equipment and did not pick up the mare. On December 13, 2001,

---

[1] (Citations omitted.) *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 334 (1) (444 SE2d 814) (1994).

[2] *Kaylor v. Atwell*, 251 Ga. App. 270, 272 (2) (553 SE2d 868) (2001).

the Morgansterns sent Sielbeck a letter demanding payment for boarding the mare and stating their intention to place a lien on the mare. Sielbeck failed to respond, and Steven Morganstern averred that he foreclosed on the mare. The mare gave birth to a colt in May 2002. March claims that she was the owner of record of the mare at that time.

March averred that she had no contact with Sielbeck until June 2002, when March learned that the mare and colt were in the Morgansterns' possession. March contacted the Morgansterns, demanded that she be permitted to reclaim the mare, and informed them that the colt belonged to Medlin. Medlin, who had been trying without success to contact Sielbeck, finally learned the location of the colt and mare from March. In August, the Morgansterns sent March a letter demanding payment for the care and maintenance of the mare and colt. On September 11, 2002, the Paso Fino Horse Association issued a certificate of registration listing Steven Morganstern as the registered owner. Shortly thereafter, Medlin's attorney contacted the Morgansterns and demanded either possession of the colt or damages in the amount of $10,000.

The parties remained at an impasse, and on December 23, 2002, Medlin filed suit against March and the Morgansterns. The complaint alleges that Medlin is entitled to specific performance of her contract with March; that the Morgansterns tortiously interfered with that contract; that the Morgansterns have no legal or equitable interest in the colt and should be required to relinquish it to Medlin; and that the Morgansterns deprived Medlin of the use and benefit of the colt. Medlin demanded compensatory and punitive damages.

The Morgansterns filed a counterclaim against Medlin and a cross-claim against March, asserting a lien against the colt pursuant to OCGA § 44-14-490 and a quantum meruit claim. They seek to recover the reasonable value of services rendered for the care and rearing of the colt in the event that either Medlin or March is determined to be its owner. In addition, the Morgansterns asserted a claim against Medlin for attorney fees. In their counterclaim, the Morgansterns state that they had no knowledge of the agreement between March and Medlin.

The Morgansterns served Medlin with discovery, including requests for admissions, on February 10, 2003. Medlin failed to respond. On April 21, the Morgansterns moved for summary judgment, contending that Medlin had admitted all facts necessary for adjudication. Medlin filed a motion to withdraw her admissions. The trial court granted Medlin's motion. However, the court determined that, even without the benefit of those admissions, the Morgansterns were entitled to summary judgment because there was no evidence that

they tortiously interfered with the March/Medlin contract. Specifically, the court found that there was no evidence that the Morgansterns had notice of Medlin's interest in the colt or of the March/Medlin contract at the time Sielbeck delivered the mare. The court also noted that, even though Medlin knew that the pregnant mare was being traded, she failed to perfect her interest in the colt or otherwise provide notice of her interest to future purchasers. This appeal followed.

Medlin argues that the grant of summary judgment was in error because (a) genuine issues of fact remain for jury resolution on her tortious interference claim, and (b) the complaint states a claim for possession of the colt.

a. To recover under a theory of tortious interference with contractual relations, a plaintiff must show that a defendant: (1) acted improperly or wrongfully and without privilege; (2) acted purposely, with malice, and with the intent to injure; (3) induced a third party to breach a contract with the plaintiff; and (4) caused plaintiff financial injury.[3] Medlin argues that the Morgansterns' refusal to relinquish possession of the colt constitutes evidence of improper or wrongful conduct. She contends that their attempt to foreclose on the Paso Fino mare and to change its registration after receiving notice that the colt belonged to Medlin is evidence that they acted purposely, with malice, and with the intent to injure. As for the third element, Medlin claims that by refusing to give up the colt, the Morgansterns have prevented March from fulfilling her contractual obligation, thereby inducing a breach of the contract. Finally, Medlin asserts that the Morgansterns' actions have caused her financial injury.

We hold that the trial court correctly granted summary judgment to the Morgansterns on this claim. A party cannot intentionally and maliciously induce a breach of a contract of which he or she is unaware.[4] The undisputed evidence shows that the Morgansterns did not know that the Paso Fino mare was pregnant. There is no evidence that they were aware of Medlin's interest in the colt until at least June 25, 2002, when they received an electronic communication from March. Nor did the Morgansterns possess constructive knowledge of Medlin's claim because she did not perfect a security interest in the foal. "[T]he unborn young of animals" is included in the term "goods" in the Uniform Commercial Code.[5] With certain exceptions that are inapplicable to this case, a financing statement must be filed

---

[3] *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 740 (492 SE2d 526) (1997).

[4] Compare *Tom's Amusement Co. v. Total Vending Svcs.*, 243 Ga. App. 294, 296-297 (2) (b) (533 SE2d 413) (2000) (physical precedent only), with *Derosa v. Shiah*, 205 Ga. App. 106, 110 (3) (421 SE2d 718) (1992).

[5] OCGA § 11-9-102 (a) (45).

to perfect a security interest in goods,[6] including horses.[7] The procedure for filing a financing statement is set out in OCGA §§ 11-9-501 through 11-9-504. It is undisputed that Medlin did not follow this procedure. In addition, Medlin did not record a lien against the unborn foal pursuant to OCGA § 44-14-511, which gives the owner or keeper of any stallion "a lien upon the offspring thereof for the service of the stallion." The lien is ineffective "unless it is recorded in the office of the clerk of the superior court of the county where the owner of the mother resides within six months after the performance of the service."[8] Medlin failed to record the special lien to which she was entitled following the service by her stallion.

Furthermore, Medlin failed to offer evidence to contradict the affidavit testimony of Steven Morganstern that he and his wife had foreclosed their lien on the mare by the time they became aware of Medlin's claim. The lien arose under OCGA § 44-14-490, which provides that "every operator of a facility for boarding animals . . . shall have a lien on each animal . . . boarded, or cared for by them while in their custody and under contract with the owner of the animal . . . for the payment of charges for the treatment, board, or care of the animal." If the charges for the care of the animal are not paid within ten days after demand for same is made by certified mail, the animal is deemed abandoned, and the operator may dispose of the animal.[9] No legal proceedings are necessary to enforce the lien.[10] In this case, Medlin did not come forward with any evidence to contradict the Morgansterns' evidence that they complied with the statutory procedure for asserting the lien and demanding payment. Their lien on the mare was superior to Medlin's inchoate, unperfected interest in the unborn foal.[11]

In the absence of evidence to contradict the Morgansterns' evidence that they lacked both constructive and actual knowledge of Medlin's interest in the foal, the trial court did not err in granting summary judgment on Medlin's claim for tortious interference with contractual relations.

b. However, Medlin is correct that her complaint states a claim, which the trial court did not address, for possession of the foal. Specifically, the complaint states that the Morgansterns have no

---

[6] OCGA § 11-9-310 (a).

[7] See generally *Russell v. Lawrence*, 234 Ga. App. 612, 614 (507 SE2d 161) (1998).

[8] OCGA § 44-14-511.

[9] OCGA § 44-14-491.

[10] OCGA § 44-14-493.

[11] See generally *Atlantic Steel Credit Union v. Shephard*, 204 Ga. App. 297, 298-299 (1) (419 SE2d 132) (1992) (priority of lien for storage of abandoned vehicle).

legal or equitable interest in the colt; that the colt belongs to Medlin; and that the Morgansterns should be ordered to relinquish possession of it to Medlin.[12] Contrary to the Morgansterns' contention, Medlin was not required to plead a specific cause of action, such as trover. "A complaint is not required to set forth a cause of action, but need only set forth a claim for relief. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient."[13] In addition, "[i]n order to prevail on a motion for summary judgment, a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence."[14]

In the case at bar, Medlin offered affidavit testimony raising a question of fact on her claim for possession of the colt. Cynthia Griffeth, a professional horse trainer, averred that she traveled to the Morgansterns' farm in the fall of 2002 to evaluate the mare; that she inquired about the mare and colt; and that Steven Morganstern informed her that the colt belonged to Medlin. This statement is hearsay; however, it is admissible under OCGA § 24-3-31 as an admission of a party-opponent.[15] Its presence in the record raises a question of fact precluding summary judgment on Medlin's claim to possession and ownership of the colt.[16] We note however, that even if it is determined, either by a jury or on another motion for summary judgment after further discovery, that Medlin is the colt's rightful owner, her right to possession would be subject to the Morgansterns' lien on the animal, pursuant to OCGA § 44-14-490, for its feeding, board, and care.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 28, 2004 —
RECONSIDERATION DENIED JUNE 28, 2004.

---

[12] The general rule is that "[t]he offspring of all animals follows the ownership of the mother and belongs to the owner of the mother at the time of birth." OCGA § 44-1-10. *Johnson v. Stevens*, 19 Ga. App. 192 (91 SE 220) (1917) (decided under Civ. Code 1910, § 3651). See also *Walton v. Mitchell*, 11 Ga. App. 159 (74 SE 1006) (1912).

[13] (Citation and punctuation omitted.) *Christner v. Eason*, 146 Ga. App. 139, 140 (245 SE2d 489) (1978). Accord *Sulejman v. Marinello*, 217 Ga. App. 319, 320 (2) (457 SE2d 251) (1995).

[14] (Citations and punctuation omitted.) *Hyde v. Gill*, 236 Ga. App. 729, 731 (1) (513 SE2d 278) (1999).

[15] See *Cleveland v. Bryant*, 236 Ga. App. 459, 461 (3) (512 SE2d 360) (1999).

[16] See *Ga. Farm &c. Ins. Co. v. Wall*, 242 Ga. 176, 178-179 (2) (249 SE2d 588) (1978); *Foster v. Nix*, 173 Ga. App. 720, 727 (2) (327 SE2d 833) (1985).

*Edwin S. Varner, Jr.*, for appellant.

*Weinstock & Scavo, Michael Weinstock, Jennifer E. Butler*, for appellees.