[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10620

Non-Argument Calendar

_____

SHOMAN KASBEKAR,
SUSHAMA S. KASBEKAR,
SHEKHAR M. KASBEKAR,

                                        Plaintiffs-Appellants,

*versus*

IVY STATION COMMUNITY ASSOCIATION, INC.,
WEISSMAN, P.C.,
JASON LOMONACO,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-05928-JPB

_____

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Shoman, Sushama, and Shekhar Kasbekar appeal from the dismissal of their lawsuit challenging a state court judgment from 2007. On appeal, they argue that the district court erred by not preliminarily determining if the underlying state court judgment was void ab initio for lack of jurisdiction and violating due process, and for ultimately applying the *Rooker-Feldman* doctrine. They also argue the district court erred when it held that Shoman, as a third-party beneficiary of a contract that was made impossible by the state court judgment, did not have standing to assert tortious interference with contractual relations. Finally, they argue that the district court erred by denying their motion for leave to amend.

According to their complaint, in 2000, Shekhar and Sushama entered into an agreement to transfer the real property (their home) they owned together to Shoman when he reached the age of 21 or its proceeds should it be sold before then. Four years later, Defendant Ivy Station Community Association ("ISCA") through its attorneys, Defendants Weissman, P.C., and Jason Lomonaco, filed a claim of lien upon the property "in accordance with" the Covenants. Shekhar filed a complaint in Gwinnett County

Superior Court, contesting the lien and seeking relief for violations of the Covenants by ISCA.  Shortly thereafter, Defendants filed an Answer and Counterclaim.  Several months later, Defendants filed an Amended Counterclaim and a motion to add Sushama as a defendant to the Amended Counterclaim, which the court granted. However, the Amended Counterclaim did not list Sushama as a defendant despite the court's order stating that it could add her.  In June 2005, the court dismissed the complaint with prejudice on procedural grounds, and August 2005, the court issued a default judgment against Shekhar that did not mention Sushama.

A year later, ISCA filed an Additional Counterclaim and an affidavit of service that it claimed showed that Sushama had been served with the counterclaim.  Shekhar was not added to the Additional Counterclaim.   In their complaint filed on December 31, 2018, Appellants now allege that Defendant Lomonaco falsely claimed that ISCA was able to serve Sushama with the Amended Counterclaim and falsely added her as a third-party defendant.  In June 2007, the state court granted ISCA's motion for summary judgment against Sushama and ordered a money judgment jointly and severally against both Shekhar and Sushama although Shekhar was not named in the Additional Counterclaim and Sushama was not named in the Amended Counterclaim.  As a result of the judgment, the home property was sold to satisfy the state court judgment.

Appellants' instant complaint seeks to void the 2007 Gwinnett County Superior Court judgment.  They also bring various

state law claims arising from the Gwinnett County judgment.   The district court granted the Defendants' motion to dismiss, finding Sushama and Shekhar's claims barred by the *Rooker-Feldman* doctrine and that Shoman lacked standing; it denied Appellants' motion for leave to amend their complaint as futile.

I.

The *Rooker-Feldman* doctrine occupies "narrow ground" and is "confined to cases of the kind from which the doctrine acquired its name," i.e., *Rooker* and *Feldman. Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In those two cases, the Court held that state court litigants do not have a right of appeal in the lower federal courts and that they cannot appeal to federal district courts, "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.  The rule derives from the jurisdictional boundaries that Congress set for the federal courts.  First, federal district courts generally cannot hear appeals. *Id.* at 291–92 (citing 28 U.S.C. § 1331). And second, neither district courts nor the circuits can touch state court judgments; only the Supreme Court can "reverse or modify" them. *Id.* at 283 (citing 28 U.S.C. § 1257(a)).  Permitting federal district courts to alter or directly review the judgments of state courts would violate both of those jurisdictional grants. *See Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002).

As the Court in *Exxon-Mobil* explained, federal courts do not lose jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court. 544 U.S. at 293. Rather, "[o]nly when a losing state court litigant calls on a district court to modify or 'overturn an injurious state-court judgment' should a claim be dismissed under *Rooker-Feldman*." *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (quoting *Exxon-Mobil*, 544 U.S. at 292). Because of its origin, the doctrine is jurisdictional, not simply a form of preclusion. *Id.* "[A] claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it complains of injuries caused by state-court judgments and invites review and rejection of those judgments." *Id.* at 1211 (quotations and citations omitted).

In *Behr*, the court stated that the proper approach for district courts was to evaluate each claim independently to determine if it was merely an appeal of the state court judgment. *Id.* at 1213. The plaintiffs there raised a due process claim based on the "use of falsified and/or coerced information as a basis for the proceedings and decisions" and "restriction of access to courts and denial of adequate counsel." *Id.* They raised those claims in order to obtain money damages, not for the court to review and reject the state court's child custody judgment. *Id.* Because they sought damages, not the reversal of the decision, the claim did not fall under the *Rooker-Feldman* doctrine. *Id.* Similarly, the court held that the plaintiffs' claim for damages from discrimination on the part of the

defendants during the underlying court proceedings also fell outside of the doctrine "because it seeks relief for violations that happened during the state processes, not rejection of the state court judgment." *Id.*

With this framework in mind, we examine the claims dismissed by the district court because of lack of subject matter jurisdiction under *Rooker-Feldman*. All of those claims sought the reversal of the state court's various judgments or were premised on the idea that the state court's orders were erroneous. The first fifteen counts sought to void the state court judgment for due process violations and lack of personal jurisdiction. The sixteenth seeks to void the judgment because of alleged fraud. Counts 17-19 and 21-22 allege state court claims for trespass to realty and personalty, nuisance, tortious interference with contractual relations, and intentional infliction of emotional distress that are essentially challenges to the state court judgment. Court 20 alleges that Appellee Lomonaco breached his legal duty by allegedly fraudulently creating the party designations in the case style. Count 23 is derivative of the preceding counts in that it seeks attorneys' fees and exemplary damages. Thus all fell under the bar imposed by *Rooker-Feldman* because all seek to void that judgment.

However, Appellants claim that *Rooker-Feldman* should not apply when underlying state court judgments are void for lack of jurisdiction. This Court has not recognized an exception to the *Rooker-Feldman* doctrine for underlying state judgments that are void ab initio. *May v. Morgan Cnty., Ga.*, 878 F.3d 1001, 1007 (11th

Cir. 2017).  And we need not decide that issue in this case, because we conclude below that Appellants' challenges to the state court's jurisdiction are without merit.  As part of their jurisdictional argument, Appellants claim that no personal jurisdiction was ever established over Sushama and the Additional Counterclaim did not list Shekhar so he had no notice of the contents of the claim or opportunity to contest it.   But contrary to their arguments, there was jurisdiction over Sushama.  Among the many documents appended to the complaint in this matter was a December 7, 2004, order permitting ISCA to add Sushama as a party and an affidavit of service, showing that Sushama had been served on August 9, 2006, and an order of the state court finding as a fact that personal jurisdiction over Sushama had been obtained.  Appellants' allegations challenging the affidavit are mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions").  Further, the district court here found, as it was entitled to in a factual attack on subject matter jurisdiction, *see Hakki v. Secretary, Department of Veterans Affairs*, 7 F.4th 1012, 1023 (11th Cir. 2021), that service was effected on Sushama.  Although they make conclusory arguments that the district court should not have made that determination, Appellants make no arguments showing that the district court's finding of fact is clear erroneous.

Additionally, the money judgment awarded to ISCA was based upon the default judgment obtained on the Amended Counterclaim against Shekhar and the summary judgment order granting the Additional Counterclaim against Sushama.  As the district court noted, those counterclaims were substantively identical.  Shekhar had notice to defend against the counterclaim—indeed, Shekhar initiated the state court litigation, and lost on the counterclaim—and he was liable based on that counterclaim.  Thus the superior court had jurisdiction and the order was not void.  We also note that Shekhar and Sushama each filed a notice of appeal challenging the state court judgment.

In sum, the *Rooker-Feldman* doctrine applies because all of Shekhar and Sushama's claims are based on the premise of error in the state superior court's order.  Because the *Rooker-Feldman* bars the claims, the amendment of the complaint to show diverse citizens would be futile and the district court did not err when it did not permit the Appellants leave to amend their complaint.

## II.

Appellants argue that the *Rooker-Feldman* doctrine cannot operate to bar Shoman because he was not a party to the state court litigation and thus is not a losing litigant in state court who can be barred by the doctrine.  The district court dismissed the claims brought by Shoman Kasbekar for lack of standing.  As reviewing court, we may affirm on any basis supported by the record. *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

Appellants' claim with respect to Shoman is that Defendants tortiously interfered with Shoman's rights as beneficiary of an alleged agreement in 2000 between Shekhar and Sushama to transfer ownership of the property to their son, Shoman, when he reaches the age of twenty-one.  The claim is that Defendants tortiously interfered with Shoman's right to have the property transferred to him.  For numerous reasons, we conclude that this claim is wholly without merit.  For example, the only non-conclusory tortious actions of the Defendants that Appellants have identified relate to the alleged defects in the state court judgment, which we have rejected above.  That is, with no tortious action, there can be no tortious interference.  Also, there can be no tortious interference with contractual relations when, as here, there are no allegations that Defendants knew of the alleged agreement to benefit Shoman—at least in the absence of conduct unlawful in itself, like demolishing someone else's property.  *Medlin v. Morganstern*, 601 S.E.2d 359, 362 (Ga. App. 2004) ("A party cannot intentionally and maliciously induce a breach of a contract of which he or she is unaware."); *Piedmont Cotton Mills Inc. v. H.W. Ivey Constr. Co., Inc.*, 137 S.E.2d 528, 531 (Ga.App. 1964) (Interference with contractual relations is an intentional tort, . . . it presupposes knowledge of the plaintiff's interests . . .  However, T. W. Tift's act of going upon the land of General Warehouse 2, Inc. and demolishing the work that had been accomplished on its bridge constitutes conduct unlawful in itself").  Significantly, the alleged agreement is almost certainly

unenforceable in violation of the Statute of Frauds.[1] O.C.G.A. § 13-5-30. Finally, it is not clear to us whether or not Shoman lacked standing, as the district court found.  But it is clear to us that a party standing in the shoes of Shoman has no viable tortious interference claim against a judgment creditor who files and prosecutes a lien against real property of the judgment debtors, the record title of which property is in the sole names of the judgment debtors.[2]

---

[1]    There is no allegation in the Complaint that the alleged agreement was in writing, as is required by the Statute of Frauds when, as here, the agreement concerns real estate and cannot be performed within one year.  And there is not a reasonable inference that the agreement was in writing in light of the following facts:

- There is an allegation only of "an agreement" between a husband and wife to transfer the property to their son, Shoman, when he reaches the age of 21; in other words, any lawyer preparing a complaint would be aware that the Statute of Frauds requires agreements concerning real estate to be in writing and accordingly would allege same—especially when the agreement is between a husband and wife who ordinarily deal with each other informally;

- Although the 1999 warrant deed when the property was conveyed to Sushama and Shekhar was attached to the Complaint, no such deed from Sushama and Shekhar was attached, or even referred to; and

- When referring to the alleged agreement in Appellants' brief on appeal to us, the Appellants cited the warranty deed to Sushama and Shekhar, but did not refer to any deed from them to Shoman.

[2]    The shoes in which Shoman stands are as follows:

20-10620               Opinion of the Court                    11

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

- Shoman was the third-party beneficiary of an oral agreement between his parents in 2000 to convey the real property to him when he reaches the age of 21;

- At the time of the judgment lien in 2007, Shoman would not be 21 for years and thus had no ownership interest in the property, only his third-party contingent beneficiary interest;

- At the time of the judgment lien in 2007, the alleged agreement was not recorded in the title records, and was not otherwise known to the judgment creditor;

- There are no non-conclusory allegations of tortious actions on the part of the judgment creditor; and

- There are no allegations that the judgment creditor had any independent legal duty to Shoman.